IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BIODELIVERY SCIENCES INTERNATIONAL, INC. and ARIUS TWO, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CHEMO RESEARCH, S.L., INSUD PHARMA S.L., INTELGENX CORP., and INTELGENX TECHNOLOGIES CORP., <br><br> Defendants. | C.A. No. 19-444 (CFC) (CJB) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR
<u>LEAVE TO AMEND INVALIDITY CONTENTIONS</u>**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................. 1

II. BACKGROUND ................................................................................................................... 2

III. ARGUMENT ......................................................................................................................... 4

    A. Defendants Were Required to Amend Their Contentions Upon Learning of BDSI's Proposed Claim Construction ................................................................ 4

    B. Defendants Cited Authority Is Not Applicable ......................................................... 9

    C. BDSI Would Be Prejudiced If Defendants' Motion Is Granted ........................... 10

IV. CONCLUSION .................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ACQIS LLC v. Appro Int'l, Inc.*,
  No. 6:09 CV 148, 2011 WL 13137344 (E.D. Tex. Jan. 20, 2011) ...........................7

*Bayer Cropscience AG v. Dow AgroSciences LLC*,
  No. 10-1045 (RMB/JS), 2012 WL 12904381 (D. Del. Feb. 27, 2017) ................5, 7

*Convolve, Inc. v. Compaq Computer Corp.*,
  No. Civ. 5141 (GBD) (JCF), 2006 WL 2527773 (S.D.N.Y. Aug. 31, 2006) ............6

*Copper Innovations Group, LLC v. Nintendo Co*,
  No. 2:07cv1752, 2012 WL 628465 (W.D. Pa. Feb. 27, 2012) ..................................6

*Fujifilm Corp. v. Motorola Mobility LLC*,
  No. 12-cv-03587-WHO, 2014 WL 491745 (N.D. Cal. Feb. 5, 2014) .......................9

*Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*,
  No. 14-cv-00876-RS (JSC), 2016 WL 2855260 (N.D. Cal. May 13, 2016) ............9

*Nuance Commc'ns, Inc. v. ABBYY Software House*,
  No. C 08-02912 JSW (MEJ), 2012 WL 2427160 (N.D. Cal. June 26, 2012) ..........9

*O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.*,
  467 F.3d 1355 (Fed. Cir. 2006)..........................................................................5, 10

*Prometheus Labs. Inc. v. Roxane Labs., Inc.*,
  Case Nos. 11-1241, 11-230, (D.N.J. Aug. 6, 2012) (D.E. 174 in 11-1241) ........6, 10

*Radware Ltd. v. F5 Networks, Inc.*,
  No. C-13-2024 RMW, 2014 WL 3728482 (N.D. Cal. July 28, 2014) .....................9

*Takeda Pharm. Co. v. Sun Pharma Global FZE*,
  No. 14-4616 (MLC), 2016 WL 9229318 (D.N.J. May 16, 2016) ........................6, 7

*TFH Publ'ns., Inc. v. Doskocil Mfg. Co.*,
  705 F. Supp. 2d 361 (D.N.J. 2010) ..........................................................................9

*Thought, Inc. v. Oracle Corporation*,
  No. 12-cv-05601-WHO, 2015 WL 5834064 (N.D. Cal. Oct. 7, 2015) ....................6

*Vasudevan Software, Inc. v. Int'l Bus. Machs. Corp.*,
  No. C09-05897 RS (HRL), 2011 WL 940263 (N.D. Cal. Feb. 18, 2011)................9

*Verinata Health, Inc. v. Sequenom, Inc.*,
  No. C12-00865 SI, 2014 WL 789197 (N.D. Cal. Feb. 26, 2014)..............................................6

*VLSI Tech. LLC v. Intel Corp.*,
  C.A. No. 18-966 (CFC) (D. Del. April 22, 2019)...................................................................10

*Word to Info Inc. v. Facebook, Inc.*,
  No. 15-cv-03485-WHO, 2016 WL 6276956 (N.D. Cal. Oct. 27, 2016) ..........................5, 6, 7

*Yodlee, Inc. v. CashEdge, Inc.*,
  No. C 05-01550 SI, 2007 WL 1454259 (N.D. Cal. May 17, 2007)......................................8, 9

**Statutes**

35 U.S.C. § 112................................................................................................................2, 10

**Other Authorities**

Fed. R. Civ. P. 26...................................................................................................................4

I.  **INTRODUCTION**

After this Court rejected Chemo Research, S.L., Insud Pharma S.L., IntelGenx Corp., and IntelGenx Technologies Corp.'s (collectively "Defendants") attempt to add unnecessary limitations to the asserted claims, Defendants now seek to expand their defenses with previously undisclosed invalidity theories. This Defendants cannot do. In order to wholesale amend their invalidity contentions by adding completely new theories, not merely adding new evidence to existing contentions, Defendants acknowledge that they must establish "good cause." In their motion, Defendants rely on the Court's adverse claim construction ruling as the alleged good cause for amending their contentions, but the ruling does not justify Defendants' untimely attempt to amend. "Good cause" requires reasonable diligence. And in the case of an adverse claim construction ruling, courts measure whether a party has been diligent in seeking an amendment, not from the date of the court's claim construction ruling, but from the date when the party first learned of the opposing party's proposed construction that was ultimately adopted. Courts also examine whether the claim construction adopted by the Court was "unexpected" and could not have been anticipated by the party seeking the amendment. Here, Defendants do not come close to meeting their burden.

Defendants were well aware of BDSI's claim construction positions in *August of 2019*, some five months ago, but specifically decided not to raise an indefiniteness defense tied to BDSI's position on "bioerodable mucoadhesive layer." Defendants even admit they were aware of BDSI's position no later than *September 13, 2019*, four months ago. (D.I. 121 at 2.) Defendants have thus no basis to argue they were unaware of BDSI's claim construction position. Although Defendants raised numerous indefiniteness defenses both in their contentions and in their initial claim construction chart, they *never* argued that the phrase "bioerodable mucoadhesive layer" is indefinite. Defendants similarly cannot argue that the Court adopted an

1

"unexpected construction." Indeed, the Court accepted BDSI's arguments and declined to incorporate unnecessary limitations into the claims. The Court's decision was unsurprising and consistent with the "overwhelming" Federal Circuit authority on proper claim construction principles (Ex. A at 28:25-29:5), and the result should have been anticipated by Defendants. Defendants' motion should be denied.

## II.   BACKGROUND

BDSI filed the Complaint in this action on March 1, 2019, in response to a notice letter sent by Defendants nearly a year ago alleging that the patents-in-suit are invalid, unenforceable, or not infringed by Defendants' ANDA product. (D.I. 1.) Following a scheduling conference, the parties reached agreement on a proposed case schedule, which the Court adopted. (D.I. 39.)

The parties agreed to exchange a list of claim terms and proposed constructions on August 16, 2019, before Defendants' invalidity contentions were due. (*Id.*) In its August 16, 2019 letter, BDSI indicated that the terms in the asserted patents do not require any construction. (Ex. E.) Defendants identified thirty-six claim terms for construction on the same date. (Ex. F.) Among these thirty-six terms, Defendants raised numerous terms that they argued were "indefinite." (*Id.*) For the claim terms reciting a "bioerodable mucoadhesive layer," Defendants sought to add the word "solid." (*Id.* at 1 (proposed construction for "a bioerodable mucoadhesive layer" is "a <u>solid</u> bioerodable mucoadhesive layer") (emphasis added)). Defendants did not identify the phrase "bioerodable mucoadhesive layer" as indefinite. (*Id.*)

Defendants served their invalidity contentions on August 26, 2019, again in accordance with the agreed upon schedule. Defendants' invalidity contentions were over 300 pages, cited approximately 100 prior art references, and included numerous grounds for invalidity based on 35 U.S.C. § 112, including lack of written description, enablement, and indefiniteness. (*See*

Ex. D.)  Defendants' invalidity contentions, however, did not argue that the phrase "bioerodable mucoadhesive layer" is indefinite, not enabled, or lacking written description.  (*See id.*)

BDSI served its draft chart with proposed claim constructions on August 27, 2019, indicating that the phrase "bioerodable mucoadhesive layer" needed "no additional terms for construction."  (Ex. G.)  This position was also included in the final claim chart, submitted to the Court on August 30, 2019, and did not change throughout the *Markman* process.  (D.I. 50.)

In its opening claim construction brief, served on September 13, 2019, BDSI reiterated that a proper construction of the phrase "bioerodable mucoadhesive layer" does not require additional limitations and argued that Defendants' proposed construction improperly reads unnecessary limitations into the claim language.  (D.I. 84 at 10-14, 18-22.)  BDSI explained that "[w]hile the mucoadhesive layer is in solid form, as opposed to a liquid or a gas, at stages during the administration to a patient, there is no reason why this particular feature needs to be added to the claim."  (*Id.* at 10-11.)  BDSI also pointed out that the word solid is "ambiguous" in context as the layer completely erodes during administration of the layer, and further stated that the word "solid" is not technically correct as the "bioerodable mucoadhesive layer" is a "solid solution," containing a mixture of solids at the molecular level.  (*Id.* at 13-14.)  BDSI took the same position in its reply brief.  (*Id.* at 19-22.)  Nevertheless, Defendants did not notify BDSI of their intent to amend their contentions to add an indefiniteness argument based on BDSI's proposed claim construction.

During the claim construction hearing on December 20, 2019, BDSI's counsel again reiterated that the "bioerodable mucoadhesive layer" is not a liquid or gas, but is instead a "solid solution" that erodes during administration.  (Ex. A at 22:19-25:13.)  BDSI's counsel repeatedly stated that the "bioerodable mucoadhesive layer" is not a liquid.  (*Id.* at 22:25-23:2, 27:7-10,

3

31:7-11, 37:17-19, 38:10-12.) Further, BDSI's counsel argued that the case law clearly supported its position that additional terms need not be added to the disputed phrase. (*Id.* at 27:15-29:5.) The Court agreed, stating that BDSI's position was "overwhelmingly" supported by the case law: "[w]e don't read a limiting definition into a claim unless there's lexicography" (Ex. A at 26:14-15), and "I'm not sure anything is really overwhelming in Federal Circuit case law, but this one seems pretty close." (*Id.* at 29:3-5.) The Court declined to include Defendants' "solid" limitation in the phrase "bioerodable mucoadhesive layer." (*Id.* at 40:5-7.)

Following the *Markman* hearing, Defendants served amended invalidity contentions that *for the first time* added new invalidity/indefiniteness defenses, purportedly based on the Court's claim construction. (*See* Ex. D.) In addition to being untimely, Defendants' amended invalidity contentions mischaracterize the Court's claim construction of the phrase "bioerodable mucoadhesive layer." Contrary to Defendants' assertions, the Court did not find that the claim covers "non-solid" layers. (*See* Ex. D at 151-152, 199, 251.) Instead, the Court agreed with BDSI that additional words need not be added to the claim. (Ex. A at 40:5-7.) Defendants then filed the present motion. Fact discovery is set to close on February 3, 2020. (D.I. 39, ¶ 9.)

### III. ARGUMENT

#### A. Defendants Were Required to Amend Their Contentions Upon Learning of BDSI's Proposed Claim Construction

The Scheduling Order provides that amendments to Defendants' invalidity contentions "may be made only by order of the Court upon a timely showing of good cause." (D.I. 39, ¶ 7.)[1] The Scheduling Order includes "[n]on-exhaustive examples" that may support a finding of good cause (absent undue prejudice), but adoption of an unfavorable claim construction is *not*

---

[1] Defendants suggest that Fed. R. Civ. P. 26 requires this supplementation (D.I. 121 at 4 n.1), but Rule 26 does not relieve Defendants of their burden to establish good cause. *See, e.g.*, N.J. Pat. L.R. 3-7 ("The duty to supplement discovery responses under Fed. R. Civ. P. 26(e) does not excuse the need to obtain leave of Court to amend contentions . . . .").

included. (*Id.*) Acknowledging a "'dearth of Delaware cases interpreting what 'good cause' means' in the context of amending contentions" (D.I. 121 at 4), Defendants rely on authority from other courts to attempt to satisfy the good cause requirement.

Under such authority, "[t]o show good cause, a party seeking to amend its contentions ordinarily must show (i) that it 'acted with diligence in promptly moving to amend when new evidence is revealed in discovery,' and (ii) that the nonmoving party will not be unduly prejudiced." (D.I. 121 at 4 (citing *O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1361-63 (Fed. Cir. 2006)). "If the parties were not required to amend their contentions promptly after discovering new information, the contentions requirement would be virtually meaningless as a mechanism for shaping the conduct of discovery and trial preparation." *O2 Micro*, 467 F.3d at 1366.

"The burden is on the movant to establish diligence rather than on the opposing party to establish a lack of diligence." *Id.* If diligence is lacking, the Court need not consider prejudice. *Id.* This is so even in the case of an adverse *Markman* ruling. *See, e.g., Bayer Cropscience AG v. Dow AgroSciences LLC*, No. 10-1045 (RMB/JS), 2012 WL 12904381, at *2 (D. Del. Feb. 27, 2017) ("The key factor courts look at to determine whether good cause exists to grant an amendment to a contention is the diligence of the moving party."); *Word to Info Inc. v. Facebook, Inc.*, No. 15-cv-03485-WHO, 2016 WL 6276956, at *4 (N.D. Cal. Oct. 27, 2016) (if a court adopts the opposing party's proposed claim construction, the moving party's diligence measured from when the moving party received the proposed constructions).

Further, while Defendants cite to New Jersey and California local patent rules concerning amendments in light of *Markman* rulings, Defendants fail to acknowledge the applicable case law interpreting these rules. Such precedent instructs that diligence is measured from the date of

*receipt* of the adversary's proposed claim constructions, *not* the date of the claim construction order, as argued by Defendants. In *Word*, the California court analyzed the applicable authority, and held that "where the court adopts the opposing party's proposed claim construction, the moving party's diligence, without which there is no good cause, is *measured from the day the moving party received the proposed constructions, not the date of issuance of the Court's claim construction opinion*." *Word*, 2016 WL 6276956, at *4 (emphasis added).

Other cases have reached the same conclusion. *See, e.g.*, *Thought, Inc. v. Oracle Corporation*, No. 12-cv-05601-WHO, 2015 WL 5834064, at *8 (N.D. Cal. Oct. 7, 2015); *Verinata Health, Inc. v. Sequenom, Inc.*, No. C12-00865 SI, 2014 WL 789197, at *2 (N.D. Cal. Feb. 26, 2014); *Takeda Pharm. Co. v. Sun Pharma Global FZE*, No. 14-4616 (MLC), 2016 WL 9229318, at *4-5 (D.N.J. May 16, 2016) (party seeking to amend should have acted when opposing party proposed construction); *see also Copper Innovations Group, LLC v. Nintendo Co*, No. 2:07cv1752, 2012 WL 628465, at *2-3 (W.D. Pa. Feb. 27, 2012) (amendment denied where party waited until unfavorable claim construction ruling); *Convolve, Inc. v. Compaq Computer Corp.*, No. Civ. 5141 (GBD) (JCF), 2006 WL 2527773, at *4 (S.D.N.Y. Aug. 31, 2006) (parties who are on notice of the opposing party's claim construction and do not prepare for the fact that the court may adopt it can be held accountable); *Prometheus Labs. Inc. v. Roxane Labs., Inc.*, Case Nos. 11-1241, 11-230, Transcript of Recorded Opinion, at 15-16 (D.N.J. Aug. 6, 2012) (D.E. 174 in 11-1241) (attached as Ex. H) ("[I]f a party presents a claim construction that if adopted would result in new invalidity or infringement positions by an opposing party, the opposing party has a duty to act diligently on such information and make an application to amend. It would not be acting diligently if it sat back, waited to see if the construction was adopted, then sought to embrace another defense it was aware it would adopt if

6

its claim construction were rejected and the adversary's was adopted."); *ACQIS LLC v. Appro Int'l, Inc.*, No. 6:09 CV 148, 2011 WL 13137344, *2 (E.D. Tex. Jan. 20, 2011) ("A party cannot argue that merely because its proposed claim construction is not adopted by the Court, it is surprised and must prepare new invalidity contentions."). Indeed, even in *Bayer* (the primary case relied on by Defendants in support of amendment), the party seeking the amendment filed the motion to amend one week after receiving the opposition's proposed claim constructions and did *not* wait for a claim construction hearing or order. *Bayer*, 2012 WL 12904381, at *2.

Courts typically only use the date of the claim construction order to measure diligence when the court adopts its own construction and not one proposed by one of the parties. *See Word*, 2016 WL 6276956, at *4-5. Even there, the question is whether the claim construction offered by the Court is "unexpected," such that it could not have reasonably been anticipated. *See Takeda*, 2016 WL 9229318, at *4.

*Takeda* is particularly relevant. There, the court found that "Takeda was on notice that the District Court could potentially adopt Sun's proposed construction, and the District Court's construction is exactly the type for which Takeda can reasonably be held accountable." *Id.* at *5. The court was "unpersuaded by Takeda's argument that it was diligent because it made its request to amend its Infringement Contention a mere month (which included the Christmas and New Year's holidays) after the District Court rendered its *Markman* ruling." *Id.* "Takeda was fully equipped to act sooner. It certainly could have sought to amend its Infringement Contentions . . . shortly thereafter when Sun proposed its . . . noninfringement limitation. Takeda did not do so and its failure is its own." *Id.*

Here, as in *Takeda* and *Word*, Defendants were on notice for *months*—as of late August 2019—of BDSI's position that the phrase "bioerodable mucoadhesive layer" did not require the

7

addition of unnecessary limitations. (*See* Ex. E, Ex. G.) Nevertheless, Defendants never raised any indefiniteness/non-enablement/written description contentions based on BDSI's claim construction position. Instead, applying a "heads I win, tails you lose" approach to litigation, Defendants waited until after they lost their claim construction argument in order to advance its new position, mere weeks before the close of fact discovery.

Further, in addition to the "bioerodable mucoadhesive layer" term, the Court only needed to construe "buffered environment," "about," "third layer or coating," "transmucosal," and "a subject." (*See* D.I. 84.) This discrete number of claim terms could not have limited Defendants' ability to reasonably set forth in amended contentions its indefiniteness/non-enablement/written description arguments based on BDSI's proposed construction.

Defendants' reliance on the Court's statements during the claim construction hearing is also misplaced to the extent Defendants appear to suggest that the Court allowed Defendants to raise new invalidity defenses. (D.I. 121 at 7.) In fact, at the hearing, Defendants' counsel strongly implied that it already raised indefiniteness/non-enablement defenses based on its "solid" claim construction argument. (*See* Ex. A at 36:1.) The Court then noted the impact of not importing the limitations sought by Defendants might be to strengthen such arguments. The Court, however, was unaware that Defendants never raised those theories in their contentions, and never sought to amend their contentions despite knowing BDSI's position for months.

Moreover, Defendants' reliance on *Yodlee, Inc. v. CashEdge, Inc.*, No. C 05-01550 SI, 2007 WL 1454259 (N.D. Cal. May 17, 2007) is misplaced. In *Yodlee*, the court specifically allowed the amendment where "[t]he Court issued *no substantive ruling* between the time CashEdge filed its Final Invalidity Contentions and the time it filed its motion. The Court issued its *claim construction order long before CashEdge filed its final contentions*." *Id.* at \*2.

8

(emphasis added). The court thus explained that the "policy behind the Patent Local Rules of 'preventing the 'shifting sands' approach to claim construction' is therefore not at risk here." *Id.* The facts here are the *opposite*. Defendants' amendment is made specifically in response to the Court's decision rejecting Defendants' claim construction position, and thus implicating the very policy concern referenced in *Yodlee, O2 Micro,* and other cases considering these motions.

**B.    Defendants Cited Authority Is Not Applicable**

The other cited cases relied on by Defendants are simply not applicable. For example, Defendants cite *TFH Publ'ns., Inc. v. Doskocil Mfg. Co.*, 705 F. Supp. 2d 361 (D.N.J. 2010), but that case does not discuss claim construction diligence at all. Similarly, in *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-cv-00876-RS (JSC), 2016 WL 2855260 (N.D. Cal. May 13, 2016), a stay in the case largely explained the delay. *Id.* at *6. In *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, 2014 WL 491745 (N.D. Cal. Feb. 5, 2014), the amending party was found diligent because of significant efforts it undertook to find prior art, which is irrelevant here. *Id.* at *3-4. In *Radware Ltd. v. F5 Networks, Inc.*, No. C-13-2024 RMW, 2014 WL 3728482 (N.D. Cal. July 28, 2014), the court found diligence because the schedule in the case specifically provided for further amendments after claim construction (*Id.* at *2), which this case does not. In *Nuance Commc'ns, Inc. v. ABBYY Software House*, No. C 08-02912 JSW (MEJ), 2012 WL 2427160 (N.D. Cal. June 26, 2012), the patentee was allowed to amend its infringement contentions when it sought to amend as soon as the accused infringer acquired the products. *Id.* at *2. And in *Vasudevan Software, Inc. v. Int'l Bus. Machs. Corp.*, No. C09-05897 RS (HRL), 2011 WL 940263 (N.D. Cal. Feb. 18, 2011), amended contentions were served mere days after key deposition testimony was confirmed. *Id.* at *2-3. None of these cases support Defendants' amendment here.

### C. BDSI Would Be Prejudiced If Defendants' Motion Is Granted

Defendants did not amend their contentions after learning of BDSI's claim construction position but instead waited until after the *Markman* decision and the Court's inquiry should end there. *O2 Micro*, 467 F.3d at 1368 ("Having concluded that the district court could properly conclude that O2 Micro did not act diligently . . . we see no need to consider the question of prejudice to MPS."). Nevertheless, BDSI would be prejudiced by Defendants' amendments.

By waiting until after the *Markman* hearing and rulings to raise new indefiniteness/non-enablement/written description arguments, the Defendants prevented BDSI from addressing such arguments in claim construction and its own contentions, or otherwise taking related discovery. *See Prometheus* (Ex. H), at 16. Further, Defendants' invalidity contentions are already excessive—over three hundred pages in length. (Ex. D.) Defendants rely on approximately one hundred prior art references and also advance numerous defenses under 35 U.S.C. § 112, including written description, enablement, and indefiniteness. (*Id.*) It will already be extremely difficult for an expert to address all of Defendants' presently asserted defenses in a single report. Fact discovery ends in two weeks and opening expert reports are due in a month. (D.I. 39.) Defendants should not be permitted to further expand the scope of their invalidity theories with positions they could have but did not assert before. If anything, at this point Defendants should be required to narrow their invalidity theories. *See, e.g.*, *VLSI Tech. LLC v. Intel Corp.*, C.A. No. 18-966 (CFC) (D. Del. April 22, 2019) (attached as Ex. I) (limiting Defendants to no more than 30 combinations of prior art references). Permitting Defendants to introduce new invalidity grounds at this stage will unnecessarily complicate the close of fact discovery and expert discovery and permit Defendants to significantly benefit from their own lack of diligence.

### IV. CONCLUSION

BDSI respectfully requests that the Court deny Defendants' motion.

|  |  |
|---|---|
| OF COUNSEL:<br><br>Charles E. Lipsey<br>FINNEGAN, HENDERSON, FARABOW,<br>  GARRETT & DUNNER, LLP<br>Two Freedom Square<br>11955 Freedom Drive<br>Reston, VA  20190-5675<br>(571) 203-2700<br><br>Jennifer S. Swan<br>FINNEGAN, HENDERSON, FARABOW,<br>  GARRETT & DUNNER, LLP<br>Stanford Research Park<br>3300 Hillview Avenue<br>Palo Alto, CA  94304-1203<br>(650) 849-6600<br><br>Howard W. Levine<br>Justin J. Hasford<br>Thomas J. Sullivan<br>Daniel G. Chung<br>Michael R. Galgano<br>FINNEGAN, HENDERSON, FARABOW,<br>  GARRETT & DUNNER, LLP<br>901 New York Avenue, NW<br>Washington, DC  20001-4413<br>(202) 408-4000<br><br>January 17, 2020 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Jeremy A. Tigan*<br><br>Jack B. Blumenfeld (#1014)<br>Jeremy A. Tigan (#5239)<br>Jeffrey J. Lyons (#6437)<br>1201 N. Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899-1347<br>(302) 658-9200<br>jblumenfeld@mnat.com<br>jtigan@mnat.com<br>jjlyons@mnat.com<br><br>*Attorneys for Plaintiffs* |

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on January 17, 2020, upon the following individuals in the manner indicated:

| | |
|---|---|
| Anne Shea Gaza, Esquire<br>Samantha G. Wilson, Esquire<br>YOUNG CONAWAY STARGATT & TAYLOR LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE  19801<br>*Attorneys for Defendants Chemo Research S.L.*<br>*and Insud Pharma S.L.U.* | VIA ELECTRONIC MAIL |
| Dennies Varughese, Pharm.D., Esquire<br>Adam C. LaRock, Esquire<br>Lauren A. Watt, Esquire<br>Charles Wysocki, Esquire<br>Josephine J. Kim, Esquire<br>Sasha Rao, Esquire<br>STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.<br>1100 New York Avenue, N.W.<br>Washington, D.C.  20005<br>*Attorneys for Defendants Chemo Research S.L.*<br>*and Insud Pharma S.L.U.* | VIA ELECTRONIC MAIL |
| Paul T. Meiklejohn, Esquire<br>Geoffrey M. Godfrey, Esquire<br>David Tseng, Esquire<br>DORSEY & WHITNEY LLP<br>701 Fifth Avenue, Suite 6100<br>Seattle, WA  98104<br>*Attorneys for Defendants IntelGenx Corp. and*<br>*IntelGenx Technologies Corp.* | VIA ELECTRONIC MAIL |

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)