# Exhibit E

 FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
WWW.FINNEGAN.COM

**THOMAS J. SULLIVAN**
(202) 408-4005
thomas.sullivan@finnegan.com

August 16, 2019

Lauren Watt                                                                          **Via Email**
Sterne, Kessler, Goldstein & Fox PLLC
1100 New York Avenue, NW
Washington, DC  20005

Re:     *BioDelivery Sciences International, Inc. et al. v. Chemo Research, S.L. et al.*, C.A. No.
         19-444-CFC (D. Del.)

Dear Lauren:

Pursuant to Paragraph 15 of the Court's Scheduling Order (D.I. 39), Plaintiffs
BioDelivery Sciences International, Inc. and Arius Two, Inc. (collectively, "Plaintiffs") provide
Defendants the following disclosure regarding asserted U.S. Patent Nos. 8,147,866 ("the '866
patent"); 9,655,843 ("the '843 patent"); and 9,901,539 ("the '539 patent").  The terms and
phrases contained in the asserted claims of the '866, '843, and '539 patents are understandable to
a person of ordinary skill in the art and do not require any construction by the Court.  Plaintiffs
reserve the right to supplement or change this disclosure based on any additional evidence that
they may discover in this action, any changes in Defendants' contentions, proposed
constructions, or *Markman* briefing and related materials.  As of the date of this letter, for
example, the Chemo Defendants have refused to respond to Plaintiffs' requests to identify the pH
of the layers of their proposed generic product.  To the extent Defendants raise any claim
construction issues, or at a later point raise new non-infringement or invalidity contentions that
are based on the construction of certain claim terms, Plaintiffs reserve the right to update their
disclosure to the extent permitted under the Federal Rules of Civil Procedure and the Local Civil
Rules of the District of Delaware.  Additionally, this disclosure shall not be construed as an
admission that any particular claim language does or does not constitute a substantive claim
limitation.

Sincerely,

*Thomas J. Sullivan*

Thomas J. Sullivan

cc: Counsel of Record (via email)

# Exhibit F



**ADAM C. LAROCK**
DIRECTOR
ALAROCK@STERNEKESSLER.COM
202-772-8794

August 16, 2019

Thomas Sullivan                                                                    *Via Email*
**Finnegan, Henderson, Farabow, Garrett & Dunner**          *thomas.sullivan@finnegan.com*
901 New York Ave., N.W.
Washington, D.C. 20001

Re:      BioDelivery Sciences International, Inc. et al v. Chemo Research, S.L. et al

Dear Thomas:

Pursuant to the Scheduling Order (D.I. 39), Defendants identify the following claim terms that are in need of construction along with proposed constructions. Additionally, Defendants identify any term(s) identified by Plaintiffs in this matter or any party in Civil Action No. 18-1395-CFC, and Defendants reserve the right to rely upon any party's proposed construction(s). Defendants reserve the right to supplement or amend this list after reviewing any claim terms and proposed constructions provided by Plaintiffs.

Defendants further reserve the right to proffer non-infringement and invalidity bases which are alternative to any bases for non-infringement or invalidity based on proposed claim constructions presented in this document. By providing these preliminary proposed constructions, Defendants do not concede that the claim elements are not indefinite.

## I.      U.S. Patent No. 8,147,866

| Claim Term | Relevant Claim (s) | Proposed Construction |
|---|---|---|
| "a bioerodable mucoadhesive layer " | Claims 1, 8 | a solid bioerodable mucoadhesive layer |
| "a barrier layer" | Claims 1, 8 | a solid barrier layer |
| "direct transmucosal" | Claims 1, 8 | mucosal administration via the oral mucosa, *e.g.*, buccal and/or sublingual |
| "enhanced uptake" | Claim 1 | Indefinite |

Thomas Sullivan
August 16, 2019
Page 2

| | | |
|---|---|---|
| "rapid and efficient delivery of buprenorphine" | Claims 1, 8 | Indefinite |
| "first quantifiable plasma concentration of buprenorphine is observed at about 45 minutes" | Claim 4 | Indefinite |
| "effective plasma concentration of buprenorphine is maintained for at least 4 hours" | Claim 5 | Indefinite |
| "is a buffered environment" | Claims 1, 8 | is an environment containing a buffer |
| "a pH of between about 4 and about 6" | Claims 1, 8 | a pH of between 4 and 6, permitting nominal measurement error |

## II.     U.S. Patent No. 9,655,843

| Claim Term | Relevant Claim (s) | Proposed Construction |
|---|---|---|
| "a bioerodable mucoadhesive layer " | Claims 1, 13, 25 | a solid bioerodable mucoadhesive layer . |
| "a polymeric barrier environment" | Claims 1, 13, 25 | a solid barrier layer |
| "transmucosal" | Claim 1 | any route of administration via a mucosal membrane, including, but not limited to, buccal, sublingual, nasal, vaginal, and rectal |
| "third layer or coating" | Claims 6, 12, 18, 24 | a layer or coating that is disposed adjacent to the mucoadhesive polymeric diffusion environment and facilitates unidirectional delivery of the medicament to the mucosa |

Thomas Sullivan
August 16, 2019
Page 3

| | | Alternatively:<br><br>Indefinite |
|---|---|---|
| "a pH of between about 4 and about 7.5" | Claim 1, 13 | a pH of between 4 and 7.5, permitting nominal measurement error |
| "has a pH buffered to between about 4 and about [6 / 7.5]" | Claim 7, 19, 20 | has a pH adjusted or maintained using a buffer between 4 and [6 / 7.5], permitting nominal measurement error |

### III.    U.S. Patent No. 9,901,539

| Claim Term | Relevant Claim (s) | Proposed Construction |
|---|---|---|
| "a bioerodable mucoadhesive layer " | Claims 1, 9 | a solid bioerodable mucoadhesive layer . |
| "a barrier layer" | Claims 1 | a solid barrier layer |
| a backing layer" | Claim 9 | a solid backing layer. |
| "steady-state $C_{max}$ of plasma buprenorphine concentration" | Claim 1 | the state wherein the post dose maximum plasma concentration of buprenorphine does not differ from one dose to another |
| "opioid-experienced subject" | Claims 1, 9 | a subject currently receiving opioid therapy |
| "steady-state $T_{max}$ of buprenorphine" | Claim 14 | time to reach the steady-state $C_{max}$ of plasma buprenorphine concentration |
| "$C_{min}$ of buprenorphine" | Claim 15 | the state wherein the post dose minimum plasma concentration of buprenorphine does not differ from one dose to another |
| "steady-state $AUC_{last}$ of | Claim 16 | area under the concentration-time curve from time-zero to |

Thomas Sullivan
August 16, 2019
Page 4

| buprenorphine" | | the time of the last quantifiable concentration at steady state |
|---|---|---|
| "chronic pain" | Claim 1 | This term is defined in the specification of the '539 patent [3:41-43] and, as applied, the claim as a whole is indefinite. |
| "common opioid adverse effects" | Claim 1, 9 | This term is defined in the specification of the '539 patent [7:11-13] and, as applied, the claim as a whole is indefinite. |
| "a bioerodable mucoadhesive layer comprising an effective amount of buprenorphine disposed in a buffered polymeric diffusion environment" | Claim 9 | Indefinite |
| "chronic low back pain" | Claim 3, 4 | This term is defined in the specification of the '539 patent [3:49-51] and, as applied, the claim as a whole is indefinite. |
| "moderate to severe chronic low back pain" | Claims 4, 9 | This term is defined in the specification of the '539 patent [7:20-24] and, as applied, the claim as a whole is indefinite. |
| "significant constipation" | Claim 5 | This term is defined in the specification of the '539 patent [7:28-30] and, as applied, the claim as a whole is indefinite. |
| "significant nausea" | Claim 6 | This term is defined in the specification of the '539 patent [7:31-32] and, as applied, the claim as a whole |

Thomas Sullivan
August 16, 2019
Page 5

|  |  | is indefinite. |
|---|---|---|
| "mild" | Claim 1, 9, 17, 18, 19, 20, 21, 22 | This term is defined in the specification of the '539 patent [14:44-46] and, as applied, the claim as a whole is indefinite. |
| "moderate" | Claim 1, 9, 17, 18, 19, 20, 21, 22 | This term is defined in the specification of the '539 patent [14:47-51] and, as applied, the claim as a whole is indefinite. |
| "buffered to a pH" | Claim 1, 9 | adjusted or maintained to a pH using a buffer |
| "a pH of between about 4.0 and about 6.0" | Claim 1 | a pH of between 4.0 and 6.0, permitting nominal measurement error |
| "a pH of between about 4.0 and about 4.8" | Claim 1 | a pH of between 4.0 and 6.0, permitting nominal measurement error |

Regards,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

Adam C. LaRock

ACL/CTW

cc:   Counsel of Record
Counsel of Record for Alvogen defendants in C.A. No. 18-1395-CFC

# Exhibit G

| From: | Chung, Daniel |
|---|---|
| Sent: | Tuesday, August 27, 2019 2:13 PM |
| To: | Charles Wysocki; Sullivan, Thomas; Levine, Howard; Swan, Jennifer; Galgano, Michael; Katz, Seth; EXT-JTigan@mnat.com; 'Sklar, Steven'; 'Bays, Gregory'; 'Szelag, Ashlee'; 'Gattuso, D' |
| Cc: | Adam LaRock; Chemo Buprenorphine Film; EXT- meiklejohn.pau; 'godfrey.geoff@dorsey.com'; 'tseng.david@dorsey.com'; 'Gaza, Anne Shea'; 'Wilson, Samantha'; Fletcher Price, Bonnie |
| Subject: | RE: BDSI v. Chemo/IGX/Alvogen // Identification of Claim Terms for Construction |
| Attachments: | Parties' Claim Terms and Proposed Constructions.docx |

Charles,

We attach a chart providing plaintiffs' proposed constructions to the claim terms identified by defendants.

We further disagree with the characterizations in your e-mail. Plaintiffs have in no way been "unwilling to cooperate in the claim construction process." Defendants initially identified a total of 36 claim terms and proposed constructions. A number of the claim terms were identified as allegedly "indefinite," despite the Court's previous ruling that indefiniteness challenges would not be addressed at the claim construction stage. In an effort to streamline the issues between the parties and before the Court, plaintiffs requested confirmation from defendants that the Markman briefing and hearing will only concern the disputed claim terms, and not the terms identified as "indefinite." Defendants did not provide this confirmation until Thursday evening, and plaintiffs have diligently worked to address the remaining 23 claim terms and proposed constructions.

We propose that the parties exchange the identification of intrinsic evidence upon which the parties will rely by Thursday at 5 p.m. EST.

Please let us know if you believe it is necessary for the parties to meet and confer and your availability.

Regards,
Dan

**Daniel G. Chung**
Attorney at Law
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, NW, Washington, DC 20001-4413
202.408.4355 | fax: 202.408.4400 | daniel.chung@finnegan.com | www.finnegan.com | Bio

# FINNEGAN

**From:** Charles Wysocki
**Sent:** Monday, August 26, 2019 11:58 AM
**To:** Sullivan, Thomas ; Levine, Howard ; Swan, Jennifer ; Galgano, Michael ; Katz, Seth ; EXT-JTigan@mnat.com ; 'Sklar, Steven' ; 'Bays, Gregory' ; 'Szelag, Ashlee' ; 'Gattuso, D'
**Cc:** Adam LaRock ; Chemo Buprenorphine Film ; EXT- meiklejohn.pau ; 'godfrey.geoff@dorsey.com' ; 'tseng.david@dorsey.com' ; 'Gaza, Anne Shea' ; 'Wilson, Samantha' ; Chung, Daniel ; Fletcher Price, Bonnie
**Subject:** BDSI v. Chemo/IGX/Alvogen // Request for Meet and Confer re: BDSI Failure to Cooperate in Claim Construction

*EXTERNAL* Email:

Counsel:

I write on behalf of all Defendants. Defendants provided their identification of claim terms and proposed constructions on August 16. We have not received a response from you regarding our numerous requests for a date-certain by which Plaintiffs will propose competing constructions or agree that Defendants' construction is proper. The deadline for the parties to submit a joint claim construction chart—including citations to the intrinsic record that support a party's construction or rebut the opposing party's construction—is this Friday, August 30. BDSI's unwillingness to cooperate in the claim construction process is improper. Defendants need ample time to consider Plaintiffs' proposed constructions and identify rebuttal intrinsic evidence for Plaintiffs' proposed constructions.

Given Plaintiffs' silence on this issue, we understand that Plaintiffs accept Defendants' constructions for terms where Defendants have proposed a construction. As per my August 22 email, the parties will reserve briefing on indefiniteness for expert discovery. *See* email from C. Wysocki to T. Sullivan dated August 22.

If Defendants' understanding is incorrect, please explain why Plaintiffs have been unwilling to cooperate in the claim construction process by: (i) providing a proposed construction for the disputed terms; provided a date certain for the exchange of identifications of intrinsic evidence supporting the proposed construction, and (iii) providing a date certain by which the parties would exchange identifications of rebuttal intrinsic evidence. Given the limited time allotted for these exchanges, only two weeks after the parties identified claim terms for construction, Plaintiffs should have been prepared to take the appropriate steps to advance the case.

To the extent necessary, we are available for a meet and confer after 1 PM EST on Wednesday, August 28, about these issues.

Regards,
Charles

**Charles Wysocki**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** cwysocki@sternekessler.com
**Direct:** 202.772.8933

**Administrative Assistant:** Renee Moore
**Direct:** 202.772.8820 **Main:** 202.371.2600

**From:** Charles Wysocki
**Sent:** Thursday, August 22, 2019 6:36 PM
**To:** 'Sullivan, Thomas'; Levine, Howard; Swan, Jennifer; Galgano, Michael; Katz, Seth; EXT-JTigan@mnat.com; 'Sklar, Steven'; 'Bays, Gregory'; 'Szelag, Ashlee'; 'Gattuso, D'
**Cc:** Adam LaRock; Chemo Buprenorphine Film; EXT- meiklejohn.pau; 'godfrey.geoff@dorsey.com'; 'tseng.david@dorsey.com'; 'Gaza, Anne Shea'; 'Wilson, Samantha'; Chung, Daniel; Fletcher Price, Bonnie
**Subject:** RE: BDSI v. Chemo et al (19-cv-444-CFC) // Identification of Claim Terms for Construction

Tom,

We write on behalf of all Defendants concerning your inquiry below. To narrow disputes presented before the Court, the Chemo and Alvogen defendants agree that the parties will brief only those terms with competing constructions. This is in no way a waiver of Chemo or Alvogen's rights to raise indefiniteness during expert discovery or at trial, nor an indication that the terms are not indefinite.

Relatedly, the deadline to submit the joint claim construction chart is next Friday, August 30. When will Plaintiffs provide a draft of the chart and their proposed constructions for Defendants' consideration?

Regards,

Charles

---

**Charles Wysocki**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** cwysocki@sternekessler.com
**Direct:** 202.772.8933

**Administrative Assistant:** Renee Moore
**Direct:** 202.772.8820 **Main:** 202.371.2600

---

**From:** Sullivan, Thomas [mailto:Thomas.Sullivan@finnegan.com]
**Sent:** Tuesday, August 20, 2019 2:37 PM
**To:** Charles Wysocki; Levine, Howard; Swan, Jennifer; Galgano, Michael; Katz, Seth; EXT-JTigan@mnat.com; 'Sklar, Steven'; 'Bays, Gregory'; 'Szelag, Ashlee'; 'Gattuso, D'
**Cc:** Adam LaRock; Chemo Buprenorphine Film; EXT- meiklejohn.pau; 'godfrey.geoff@dorsey.com'; 'tseng.david@dorsey.com'; 'Gaza, Anne Shea'; 'Wilson, Samantha'; Chung, Daniel; Fletcher Price, Bonnie
**Subject:** RE: BDSI v. Chemo et al (19-cv-444-CFC) // Identification of Claim Terms for Construction

Counsel, both the Chemo and Alvogen Defendants have identified numerous claim terms as "indefinite," without providing proposed constructions. At the July 18th hearing, however, BDSI's counsel raised the issue of the consideration of indefiniteness at the Markman hearing. (July 18 Transcript at 14:3-11.) In response, the Court ruled that it was "not going to consider indefiniteness at the Markman hearing." (*Id.* at 14:12-13.) The Alvogen Defendants then stated: "We have identified, I believe it as roughly a dozen, of which maybe half of those were indefiniteness, like counsel for plaintiffs just mentioned, which we're perfectly amenable to resolving those at trial." (*Id.* at 15:14-17.) Accordingly, please confirm that the Defendants agree that the Markman briefing and hearing will only concern the claim terms that the parties have offered competing constructions, and not the terms identified as "indefinite" by the Alvogen and Chemo Defendants.

Best,
Tom

**Thomas J. Sullivan**
Attorney at Law
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, NW, Washington, DC 20001-4413
202.408.4005 | fax: 202.408.4400| thomas.sullivan@finnegan.com | www.finnegan.com

FINNEGAN

---

**From:** Charles Wysocki <CWYSOCKI@sternekessler.com>
**Sent:** Tuesday, August 20, 2019 10:07 AM
**To:** Levine, Howard <howard.levine@finnegan.com>; Swan, Jennifer <Jennifer.Swan@finnegan.com>; Galgano, Michael <Michael.Galgano@finnegan.com>; Katz, Seth <seth.katz@finnegan.com>; EXT-JTigan@mnat.com <JTigan@mnat.com>; Sullivan, Thomas <Thomas.Sullivan@finnegan.com>; 'Sklar, Steven' <ssklar@leydig.com>; 'Bays, Gregory' <gbays@leydig.com>; 'Szelag, Ashlee' <aszelag@leydig.com>; 'Gattuso, D' <dgattuso@hegh.law>
**Cc:** Adam LaRock <ALAROCK@sternekessler.com>; Chemo Buprenorphine Film <ChemoBuprenorphineFilm@sternekessler.com>; EXT- meiklejohn.pau <meiklejohn.paul@dorsey.com>; 'godfrey.geoff@dorsey.com' <godfrey.geoff@dorsey.com>; 'tseng.david@dorsey.com' <tseng.david@dorsey.com>; 'Gaza, Anne Shea' <agaza@ycst.com>; 'Wilson, Samantha' <SWilson@ycst.com>
**Subject:** RE: BDSI v. Chemo et al (19-cv-444-CFC) // Identification of Claim Terms for Construction

---

***EXTERNAL* Email:**

Counsel—

On review of Chemo's identification of claim terms for construction and their proposed construction, we noticed a typo on page 5 of the document. The proposed construction for the term "a pH of between about 4.0 and about 4.8" in claim 1 of the '539 patent should read: "a pH of between about 4.0 and about **4.8**, permitting nominal measurement error."

Separately, the deadline to submit the Joint Claim Construction Chart is August 30. Please let us know when we can expect to receive a draft of the chart, including Plaintiffs' proposed constructions of the terms, so that we may schedule a meet and confer as required by Paragraph 15 of the Scheduling Order (D.I. 39).

Regards,
Charles

---

**Charles Wysocki**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** cwysocki@sternekessler.com
**Direct:** 202.772.8933

**Administrative Assistant:** Renee Moore
**Direct:** 202.772.8820 **Main:** 202.371.2600

---

**From:** Charles Wysocki
**Sent:** Friday, August 16, 2019 6:00 PM
**To:** Levine, Howard; Swan, Jennifer; Galgano, Michael; Katz, Seth; EXT-JTigan@mnat.com; 'Sullivan, Thomas'; Sklar, Steven; Bays, Gregory; 'Szelag, Ashlee'; Gattuso, D
**Cc:** Adam LaRock; Chemo Buprenorphine Film; EXT- meiklejohn.pau; 'godfrey.geoff@dorsey.com'; 'tseng.david@dorsey.com'; 'Gaza, Anne Shea'; 'Wilson, Samantha'
**Subject:** BDSI v. Chemo et al (19-cv-444-CFC) // Identification of Claim Terms for Construction

Counsel:

Please find Defendants' identification of claim terms for construction and proposed constructions enclosed.

Regards,
Charles



**Charles Wysocki**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
1100 New York Avenue, NW, Washington, DC 20005

**Email:** cwysocki@sternekessler.com
**Direct:** 202.772.8933
**Administrative Assistant:** Renee Moore
**Main:** 202.371.2600 **Direct:** 202.772.8820

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

| U.S. Patent No. 8,147,866 | | |
|---|---|---|
| **Claim(s)** | **Term/Phrase** | **Defendants' Construction** | **Plaintiffs' Construction** |
| 1-12 | "a bioerodable mucoadhesive layer" | a solid bioerodable mucoadhesive layer | No construction necessary; "a bioerodable mucoadhesive layer" |
| 1-12 | "a barrier layer" | a solid barrier layer | No construction necessary; "a barrier layer" |
| 1-12 | "direct transmucosal" | mucosal administration via the oral mucosa, *e.g.*, buccal and/or sublingual | mucosal administration via the oral mucosa, *e.g.*, buccal and/or sublingual |
| 1-12 | "is a buffered environment" | is an environment containing a buffer | No construction necessary; "is a buffered environment" |
| 1-12 | "a pH of between about 4 and about 6" | a pH of between 4 and 6, permitting nominal measurement error | a pH of between approximately 4 and approximately 6 |

| | U.S. Patent No. 9,655,843 | | |
|---|---|---|---|
| **Claim(s)** | **Term/Phrase** | **Defendants' Construction** | **Plaintiffs' Construction** |
| 1-25 | "a bioerodable mucoadhesive layer" | a solid bioerodable mucoadhesive layer | No construction necessary; "a bioerodable mucoadhesive layer" |
| 1-25 | "a polymeric barrier environment" | a solid barrier layer | No construction necessary; "a polymeric barrier environment" |
| 1-12 | "transmucosal" | any route of administration via a mucosal membrane, including, but not limited to, buccal, sublingual, nasal, vaginal, and rectal | In the context of claims 1-12, "transmucosal" means administration via the buccal mucosa membrane |
| 6, 12, 18, 24 | "third layer or coating" | a layer or coating that is disposed adjacent to the mucoadhesive polymeric diffusion environment and facilitates unidirectional delivery of the medicament to the mucosa | No construction necessary; "third layer or coating" |
| 1-24 | "a pH of between about 4 and about 7.5" | a pH of between 4 and 7.5, permitting nominal measurement error | a pH of between approximately 4 and approximately 7.5 |
| 7, 9-12, 19-24 | "has a pH buffered to between about 4 and about [6/7.5]" | has a pH adjusted or maintained using a buffer between [6/7.5], permitting nominal measurement error | has a pH buffered to between approximately 4 and approximately [6/7.5]; no construction necessary for "buffered" |

| U.S. Patent No. 9,901,539 | | | |
|---|---|---|---|
| **Claim(s)** | **Term/Phrase** | **Defendants' Construction** | **Plaintiffs' Construction** |
| 1-22 | "a bioerodable mucoadhesive layer" | a solid bioerodable mucoadhesive layer | No construction necessary; "a bioerodable mucoadhesive layer" |
| 8 | "a barrier layer" | a solid barrier layer | No construction necessary; "a barrier layer" |
| 9 | "a backing layer" | a solid backing layer | No construction necessary; "a backing layer" |
| 1-8, 10-22 | "steady-state $C_{max}$ of plasma buprenorphine concentration" | the state wherein the post dose maximum plasma concentration of buprenorphine does not differ from one dose to another | the state wherein the post dose maximum plasma concentration of buprenorphine does not differ from one dose to another |
| 1-22 | "an opioid-experienced subject" | a subject currently receiving opioid therapy | one or more subjects currently receiving opioid therapy |
| 9 | "oral mucosal" | buccal and/or sublingual | buccal and/or sublingual |
| 14 | "steady-state $T_{max}$ of buprenorphine" | time to reach the steady-state $C_{max}$ of plasma buprenorphine concentration | time to reach the steady-state $C_{max}$ of plasma buprenorphine concentration |
| 15 | "$C_{min}$ of buprenorphine" | the state wherein the post dose minimum plasma concentration of buprenorphine does not differ from one dose to another | the state wherein the post dose minimum plasma concentration of buprenorphine does not differ from one dose to another |

| U.S. Patent No. 9,901,539 | | | |
|---|---|---|---|
| **Claim(s)** | **Term/Phrase** | **Defendants' Construction** | **Plaintiffs' Construction** |
| | | | |
| 16 | "steady-state $AUC_{last}$ of buprenorphine" | area under the concentration-time curve from time-zero to the time of the last quantifiable concentration at steady state | area under the concentration-time curve from time-zero to the time of the last quantifiable concentration |
| 1-22 | "buffered to a pH" | adjusted or maintained to a pH using a buffer | No construction necessary; "buffered to a pH" |
| 1-8, 10-22 | "a pH of between about 4.0 and about 6.0" | a pH of between 4.0 and 6.0, permitting nominal measurement error | a pH of between approximately 4.0 and approximately 6.0 |
| 1-8, 10-22 | "a pH of between about 4.0 and about 4.8" | a pH of between 4.0 and 4.8, permitting nominal measurement error | a pH of between approximately 4.0 and approximately 4.8 |

# Exhibit H

```
 1                      UNITED STATES DISTRICT COURT
                          DISTRICT OF NEW JERSEY
 2

 3   PROMETHEUS LABORATORIES INC.,      .
                                        .
 4           Plaintiff,                 .
                                        . Case Nos. 11-cv-01241,
 5   vs.                                . 11-230
                                        .
 6   ROXANE LABORATORIES, INC.,         . August 6, 2012
                                        .
 7           Defendant.                 .
                                        .
 8

 9

10                      TRANSCRIPT OF RECORDED OPINION
                        BY THE HONORABLE PATTY SHWARTZ
11                      UNITED STATES MAGISTRATE JUDGE

12

13
     APPEARANCES:
14

15    For the Plaintiff:    No one was present

16
      For the Defendant:    No one was present
17

18

19

20   Audio Operator:

21   Transcription Service:    KING TRANSCRIPTION SERVICES
                               901 Route 23 South, Center Ste. 3
22                             Pompton Plains, NJ 07444
                               (973) 237-6080
23

24
     Proceedings recorded by electronic sound recording; transcript
25   produced by transcription service.
```

Case 2:19-cv-00244-CEC-CJB  Document 134-1  Filed 01/17/20  Page 20 of 45 PageID #:
Case 2:11-cv-01241-FSH-PS  Document 174-1  Filed 08/09/12  Page 2 of 24 PageID 3764:
4472
Proceedings                                                            2

 1                    (Commencement of proceedings)

 2

 3          THE COURT:  This matter has come before the Court

 4   by way of defendant Roxane Laboratory Inc.'s request for

 5   leave to add invalidity contentions regarding plaintiff

 6   Prometheus Laboratory Inc.'s U.S. Patent Number 6,175,014,

 7   hereinafter the "'014 Patent," and plaintiff's request to

 8   strike the affirmative expert report of Bruce Ganem.  For the

 9   reasons set forth herein, the request for leave to add

10   invalidity contentions is denied and the request to strike

11   the Ganem report is granted in part and denied in part.

12          By way of background, this case concerns patents

13   for the methods of making, preparing, using and administering

14   alosetron hydrochloride to treat irritable bowel syndrome.

15   See the Amended Complaint at paragraphs 22 to 23, ECF

16   Number 67.

17          On January 16, 2001, the U.S. Patent and Trademark

18   Office issued the '014 Patent, entitled "Process For the

19   Preparation of Lactam Derivatives."  Amended Complaint at

20   paragraph 23.  The claims of the '014 Patent cover, among

21   other things, novel processes for making and preparing the

22   compound alosetron hydrochloride.  Id.

23          On September 4, 2011, the U.S. Patent and Trademark

24   Office issued U.S. Patent Number 6,248,770, hereinafter, the

25   "'770 Patent," entitled "Medicaments For the Treatment of

Case 2:19-cv-00244-CFC-CJB Document 174-1 Filed 01/17/20 Page 21 of 45 PageID #: 4473
Case 2:11-cv-01241-FSH-PS Document 174-1 Filed 08/09/12 Page 3 of 24 PageID: 3765
Proceedings                                                    3

1  Non-Constipated Female Irritable Bowel Syndrome."  Id. at 22.

2       On March 4, 2011, plaintiff filed a complaint

3  against defendant for infringement of the '770 Patent.  See

4  the Complaint, ECF Number 1 at paragraph 15.

5       On March 30, 2011, plaintiff filed an answer to

6  that complaint.  ECF Number 7.

7       On November 14, 2011, the Court granted plaintiff's

8  request to add a claim of direct infringement of the '014

9  Patent.  ECF Number 65.

10       On November 18, 2011, plaintiff filed its first

11  amended complaint against defendant, as well as Cipla Ltd.

12  and Byron Chemical Company Inc.

13       And on December 5, 2011, defendant filed its answer

14  to plaintiff's amended complaint.  ECF Number 72.

15       On March 9, 2012, the parties filed Markman opening

16  briefs as to the '014 Patent.  ECF Numbers 117 and 118.

17       On April 9, 2012, the parties filed Markman

18  response briefs as to the '014 Patent.  ECF Numbers 138 and

19  139.

20       By way of joint letter dated February 15, 2012,

21  defendant sought leave to amend its invalidity contentions as

22  to the '770 Patent to add a contention that the '770 Patent

23  was invalid for lack of written description under 35 U.S.C.

24  § 112, and that the reexamined claims were invalid under 35

25  U.S.C. § 305 for improper examination.  ECF Number 49.  The

Case 2:19-cv-00244-CFC-CJB  Document 174-1  Filed 01/17/20  Page 22 of 45 PageID #: 4474
Case 2:11-cv-01244-FSH-PS  Document 174-1  Filed 08/09/12  Page 4 of 24 PageID: 3766
Proceedings                                                        4

 1  Court denied the request on March 12, 2012.  ECF Number 120.

 2  The defendant appealed this order on March 27, 2012.  ECF

 3  Number 131.  And on June 4, 2012, Judge Hochberg denied the

 4  request to amend the invalidity contentions and affirmed the

 5  March 12, 2012, order; ECF Number 158.

 6         On March 23, 2012, the Court convened a telephone

 7  conference during which defendant raised for the first time

 8  its view that if the Court adopted plaintiff's proposed claim

 9  constructions, that the '014 Patent would be invalid.

10  Defendant asserted, however, that it believed it would be

11  premature to amend its invalidity contentions at that time

12  because the Court had not yet construed the claims.  ECF

13  Number 134.

14         On March 27, 2012, defendant deposed plaintiff's

15  claim construction expert, Dr. Gorkal [phonetic].  ECF

16  Number 169 at 4.

17         On June 25, 2012, defendant served the Ganem

18  report.  Id.

19         On June 27, 2012, the Court convened a telephone

20  conference during which the defendant again raised the

21  possibility it would seek to amend its invalidity contentions

22  based upon plaintiff's proposed claim construction.  ECF

23  Number 168.

24         By way of joint letter dated July 23, 2012,

25  defendant sought leave to amend its invalidity contentions as

1  to the '014 Patent, based on plaintiff's proposed claim

2  constructions.  ECF Number 169.

3          Defendant seeks leave to add these constructions,

4  claiming they are contingent on the Court's adoption of

5  plaintiff's proposed constructions for certain '014 Patent

6  claim terms.  And defendant argues that should the Court

7  adopt such constructions, it should be permitted to assert

8  invalidity defenses as to the '014 Patent.  Defendant argues

9  that it has good cause to amend its contentions because: (1)

10 under L. Pat. R. 3.7(a), a party has good cause to amend

11 contentions when a "claim construction by the court differ[s]

12 from that proposed by a party seeking amendment; and (2)

13 plaintiff's proposed constructions markedly differ from and

14 result in claims with far broader scope than the

15 constructions that defendant proposed.  Specifically,

16 defendant contends that under plaintiff's proposed

17 constructions, the asserted '014 Patent claims are invalid

18 because they (1) lack written description under 35 U.S.C.

19 § 112, and (2) are anticipated under § 102 and are obvious

20 under 35 U.S.C. § 103.

21         Defendant argues that it has good cause to add the

22 proposed defenses because it exercised diligence in

23 developing those theories.  Defendant argues it did not have

24 enough information to prepare and submit invalidity

25 contentions on February 7, 2012, when it received plaintiff's

Case 2:19-cv-00414-CFC-CJB Document 174-1 Filed 01/17/20 Page 24 of 45 PageID #: 4476
Case 2:11-cv-01241-FSH-PS Document 134-1 Filed 08/09/12 Page 6 of 24 PageID #: 768
Proceedings                                                                    6

 1  proposed claim constructions regarding the '014 Patent,

 2  because: (1) plaintiff's proposed constructions on their face

 3  do not convey how broad plaintiff believes its proposed

 4  construction makes the claims of the '014 Patent; and (2)

 5  defendant only learned of the full impact of plaintiff's

 6  proposed constructions on the scope of the claims after

 7  taking the deposition of plaintiff's claim construction

 8  expert Dr. Gorkal on March 27, 2012, and upon receiving

 9  plaintiff's amended disclosure of asserted claims and

10  infringement contentions on March 1, 2012, and plaintiff's

11  Markman's briefs on March 9 and April 9, 2012.  Defendant

12  also argues that it required its expert, Dr. Ganem's

13  expertise and knowledge to develop this proposed defense, and

14  his report was not disclosed until June 25, 2012.

15          Defendant argues its proposed contingent invalidity

16  contentions are not untimely, as under L. Pat. R. 3.7(a) a

17  party may amend its contentions when a "claim construction by

18  the court differ[s] from that proposed by the party seeking

19  amendment."  Defendant argues that its proposed contentions

20  appear to be premature but is raising them before the court

21  makes a Markman decision based on discussion with the

22  plaintiff and the court during the June 27, 2012, telephone

23  conference.  Defendant argues it was not aware of its

24  proposed invalidity contentions at the time plaintiff was

25  granted leave to add the '014 Patent to the case because

Case 1:19-cv-00414-CFC-CJB   Document 174-1   Filed 01/17/20   Page 25 of 45 PageID #:
4477
Case 2:11-cv-01241-FSH-PS   Document 174-1   Filed 08/09/12   Page 9 of 24 PageID #: 3765
Proceedings                                                        7

1    defendant's original contentions were due on December 22,

2    2011, before (1) defendant learned of plaintiff's proposed

3    constructions or (2) defendant could develop contentions

4    based on plaintiff's proposed constructions.  Defendant

5    argues its proposed contentions would neither delay the

6    resolution of the case nor prejudice plaintiff because (1)

7    defendant's "written description" defense presents the same

8    issues raised in the parties' Markman briefing; (2) no fact

9    discovery is necessary to support or rebut these contentions;

10   and (3) plaintiff has time to respond to develop contentions

11   in opposition to defendant's proposed contentions.  Defendant

12   argues that it provided plaintiff notice of its proposed

13   contentions by (1) serving it the June 25, 2012, affirmative

14   expert report of Bruce Ganem, which disclose defendant's

15   detailed basis for why it believes that under plaintiff's

16   claim constructions, the asserted '014 claims are invalid;

17   (2) serving its opening Markman brief as well as its

18   responsive Markman brief; and (3) discussing amending its

19   invalidity contentions during the March 23, 2012, telephone

20   conference.

21          Defendant further argues that it is in the public

22   interest for the Court to consider its contingent invalidity

23   defenses if the Court adopts plaintiff's proposed claim

24   constructions because to allow the plaintiff to block new

25   invalidity contentions based on unduly broad claim

Case 2:19-cv-00444-CFC-CJB  Document 174-1  Filed 01/17/20  Page 26 of 45 PageID #: 4478
Case 2:11-cv-01241-FSH-PS  Document 134  Filed 08/09/12  Page 8 of 24 PageID: 770

Proceedings                                              8

 1  constructions would give free license to a patentee to argue

 2  for the broadest possible constructions without regard to how

 3  the prior art would impact the validity of the claims in view

 4  of such broad constructions.

 5          In opposition, plaintiff argues that defendant

 6  lacks good cause to amend its proposed invalidity contentions

 7  because: (1) the local patent rules do not contemplate

 8  allowing amendments to contentions based on proposed claim

 9  constructions of an adverse party that the court has yet to

10  address; (2) defendant should have been aware of the

11  information necessary to assert its invalidity defenses since

12  plaintiff sought leave to add the '014 patent to the case on

13  September 23, 2011, as the information necessary to formulate

14  the defenses is found in the '014 Patent itself and its

15  prosecution history; and (3) defendant fails to explain how

16  plaintiff's proposed constructions of the asserted claims

17  prevented defendant from asserting its defenses earlier or

18  how they arise solely under plaintiff's interpretation of the

19  claims.

20          Plaintiff further argues that defendant was not

21  diligent in seeking its amendments as: (1) defendant fails to

22  identify any testimony given by Dr. Gorkal or statements made

23  in plaintiff's contentions or Markman briefing that broaden

24  plaintiff's proposed claim construction or otherwise justify

25  defendant's delay; (2) defendant's claim that it put

Case 2:19-cv-00444-CFC-CJB   Document 174-1   Filed 01/17/20   Page 27 of 45 PageID #:
4479
Case 2:11-cv-01244-FSH-PS   Document 174-1   Filed 08/09/12   Page 9 of 24 PageID #:

Proceedings                                                      9

1  plaintiff on notice of its new defenses in the <u>Markman</u>

2  briefing demonstrates defendant had sufficient information to

3  articulate invalidity defenses in early March 2012; and (3)

4  defendant could have consulted an expert when the amended

5  complaint was filed.

6         Plaintiff argues that defendant's request to amend

7  is untimely because: (1) defendant had all the information

8  necessary to assert its invalidity defenses nearly three

9  months before the Court's December 22, 2011, deadline for

10 serving invalidity contentions related to the '014 Patent;

11 (2) even if the invalidity defenses arise only under

12 plaintiff's proposed constructions of the '014 Patent claims,

13 defendant had been on notice of potential invalidity arising

14 from plaintiff's proposed construction for at least five

15 months as plaintiff's proposed constructions to the '014

16 Patent claims were closed to defendant on February 7, 2012.

17        Plaintiff further argues that as defendant cannot

18 show it was diligent in seeking to add its invalidity

19 defenses, plaintiff need not show prejudice as a result of

20 the defendant's delay.  Plaintiff further argues that

21 defendant's proposed amendments would be prejudicial as: (1)

22 defendant conducted discovery knowing it might assert an

23 invalidity defense, but plaintiff did not pursue certain fact

24 discovery in reliance on the absence of the invalidity

25 contentions defendant now seeks to add and on defendant's

 1  statement it did plan on amending its contentions before the

 2  Court construed the dispute claim terms; and (2) plaintiff

 3  built its litigation strategy around defendant's original

 4  contentions.

 5          Plaintiff further argues that allowing defendant to

 6  amend its invalidity contentions is not in the public

 7  interests as it would allow defendant to circumvent the

 8  disclosure requirements of the rules.

 9          L. Pat. R. 3.7 of the local rules of the United

10  States District Court for the District of New Jersey which

11  governs amendments to invalidity contentions provides

12  "amendment of any contentions, disclosures or other documents

13  required to be filed or exchanged pursuant to these Local

14  Patent Rules may be made only by order of the court upon a

15  timely application and showing of good cause.  The

16  application shall disclose whether parties consent or object.

17  Non-exhaustive examples of circumstances that may, absent

18  undue prejudice to the adverse party, support a finding of

19  good cause include: (a) a claim construction by the court

20  different from that proposed by the party seeking amendment;

21  (b) recent discovery of material prior art, despite earlier

22  diligent search; (c) recent discovery of non-public

23  information about accused instrumentality which was not

24  discovered despite diligent efforts before the service of

25  infringement contentions; (d) the disclosure of an

 1   infringement contention by a Hatch-Waxman Act party asserting

 2   infringement under L. Pat. R. 3.6(g) that requires responses

 3   by the adverse party because it was not previously presented

 4   or reasonably anticipated; and (e) consent by the parties in

 5   interest to the amendment and a showing that it will not lead

 6   to an enlargement of time or impact other schedule deadline.

 7   The duty to supplement discovery responses under Fed. R. Civ.

 8   P. 26(e) does not excuse the need to obtain leave of court to

 9   amend contentions, disclosures or other documents required to

10   be filed or exchanged pursuant to these Local Patent Rules."

11   L. Pat. R. 3.7.

12            Thus, pursuant to Rule 3.7, the court may permit a

13   party to amend its invalidity contentions provided the

14   following three elements are established: (1) the moving

15   party makes a timely application to the court; (2) there is

16   good cause for the amendment; and (3) there is no undue

17   prejudice to the adverse party.  See id.

18            Federal Circuit precedent governs the

19   interpretation of local patent rules because such issues are

20   "intimately involved in the substance of enforcement of the

21   patent right."  O2 Micro International Ltd. v. Monolithic

22   Power Systems Inc., 467 F.3d 1355, 1364 (Fed. Cir. 2006)

23   (internal quotation marks and citations omitted).  The patent

24   rules governing contentions are designed to encourage parties

25   to "provide early notice of their infringement and invalidity

  1    contentions and to proceed with diligence in amending those

  2    contentions when new information comes to light in the course

  3    of discovery."  Id. at 1365 to 66.

  4           The local rules "seek to balance the right to

  5    develop new information in discovery with the need for

  6    certainty as to the legal theories."  Id. at 1366.  The local

  7    patent rules require "parties to crystallize their theories

  8    of the case early in the litigation."  Id. at 1366 n.12

  9    (internal quotation marks and citations omitted).

 10           Amendments to infringement and invalidity

 11    contentions are not granted as liberally as requests for

 12    amendments to pleadings in part because "the philosophy

 13    behind amending claim charts is decidedly conservative and

 14    designed to prevent the 'shifting sands' approach" to a

 15    party's contentions.  King Pharmaceuticals v. Sandoz,

 16    Civ. No. 08-5974, 2010 WL 2015258 at *4 (D.N.J. May 20, 2010)

 17    (internal quotation marks and citations omitted); cf. Fed. R.

 18    Civ. P. 15(a)(2).

 19           New Jersey's local patent rules require the party

 20    seeking to amend to demonstrate that it has made a showing of

 21    "good cause."  L. Pat. R. 3.7.  Good cause "requires a

 22    showing of diligence."  O2 Micro, 367 F.3d at 1366.  And the

 23    "burden is on the movant to establish diligence rather than

 24    on the opposing party to establish a lack of diligence."  Id.

 25    (Internal citations omitted).

 1          The good cause showing "requires diligence

 2   throughout the discovery process and that the moving party

 3   not only must act promptly upon discovery of new

 4   [information] but also must establish that it was diligent in

 5   its search..."  West v. Jewelry Innovations Inc.,

 6   Civ. No. 07-1812, 2008 WL 4532558 at *2 (N.D. Cal. October 8,

 7   2008).  As such, the Court "must address whether the party

 8   was diligent in discovering the basis for the proposed

 9   amendment."  Id. at 2.

10          The local rule gives several non-exhaustive

11   examples of good cause, two of which focus on the moving

12   party's diligence in locating the newly discovered

13   information and its explanation for not including it in its

14   original contentions.  L. Pat. R. 3.7.  See O2 Micro, 467

15   F.3d at 1367; King Pharmaceuticals, 2010 WL 2015258 at *4.

16   According to Rule 3.7, examples of situations where good

17   cause may be found include:  "(a) a claim construction by the

18   court different from that proposed by the party seeking

19   amendment; (b) recent discovery of material prior art despite

20   earlier diligence; and (c) recent discovery of non-public

21   information about the accused instrumentality which was not

22   discovered, despite diligent efforts, before the service of

23   the infringement contention ..."  L. Pat. R. 3.7.

24          Although the local patent rule notes that "a claim

25   construction by the court different from that proposed by the

1   party seeking amendment," id., can be a circumstance that

2   merits a finding of good cause, this does not mean that

3   anytime a court adopts a claim construction different from

4   what a party proposed that that party may automatically amend

5   its invalidity contentions.  Such a leap "would destroy the

6   effectiveness of the local rules in balancing the discovery

7   rights and responsibilities of the parties." Finisar Corp.

8   v. DirectTV Group Inc., 424 F. Supp. 2d 896, 900 to 901 (E.D.

9   Tex. 2006).  Accordingly, defendant's argument that its

10  amendments are being made before claim construction and being

11  done in the event the court eventually adopts plaintiff's

12  proposed construction, does not end the inquiry.  Indeed,

13  "parties who are on notice of the opposing party's claim

14  construction and do not prepare for the fact that the court

15  may adopt it, can be held accountable." Convolve Inc. v.

16  Compaq Computer Corp., Civ. No. 5141, 2006 WL 2527773 at *4

17  (S.D.N.Y. August 13, 2006).

18        As the court in Sinclair Intellectual Property

19  Consultants Inc. v. Matsushita Electronics Industry Company

20  Ltd., Civ. Nos. 04-1436, 06-404, 08-371, 2012 WL 1015993 at

21  *5 (D. Del. March 26, 2012), put it, "when claim construction

22  remains an open issue at the time the parties serve expert

23  reports and infringement contentions, the parties have an

24  obligation to prepare for the fact that the party may adopt

25  [the other party's] claim construction." (quoting Union

Case 1:19-cv-00441-CFC-CJB Document 134-1 Filed 03/17/20 Page 33 of 45 PageID #: 4485
Case 2:12-cv-01241-FSH-PS Document 114 Filed 03/03/12 Page 16 of 24 PageID #7

Proceedings                                                                 15

1  Carbide Chemicals and Plastics Technologies Corp., v. Shell

2  Oil Company, 270 F. Supp. 2d 519, 524 (D. Del. 2003).  See

3  also Finisar, 424 F. Supp. 2d at 900 to -01.  In Finisar, the

4  court stated that to allow an amendment when a party

5  "believes in good faith that the court's claim construction

6  ruling so requires ... is intended to allow a party to

7  respond to an unexpected claim construction by the court.

8  This does not mean that after every claim construction order,

9  new invalidity contentions may be filed."

10          The local rule here attempts to provide a means to

11  amend contentions to address an unexpected construction.  To

12  interpret rule otherwise, would mean that a party could wait

13  until after the construction to take action, even though they

14  were fully equipped to act sooner.  This would be

15  inconsistent with the rule's purpose, which is to solidify

16  all known positions.  If a party knows of the adverse party's

17  construction, it will undoubtedly take steps to defeat the

18  construction and to ameliorate the impact of the construction

19  if adopted.  Thus, if a party presents a claim construction

20  that if adopted would result in new invalidity or

21  infringement positions by an opposing party, the opposing

22  party has a duty to act diligently on such information and

23  make an application to amend.  It would not be acting

24  diligently if it sat back, waited to see if the construction

25  was adopted, then sought to embrace another defense it was

Case 1:19-cv-00441-CFC-CJB Document 134-1 Filed 03/17/20 Page 34 of 45 PageID #: 4486
Case 1:12-cv-00441-CFC-CJB Document 134-1 Filed 03/09/12 Page 16 of 24 PageID #: 4486

Proceedings                                                          16

 1    aware it would adopt if its claim construction were rejected

 2    and the adversary's was adopted.

 3            Defendant, accordingly, had a duty to formulate any

 4    invalidity defenses directed at plaintiff's proposed

 5    constructions as soon as it received them and promptly seek

 6    to amend contentions it wanted to have the ability to pursue.

 7    By requiring such action, it ensures that all positions are

 8    announced as soon as the information upon which the position

 9    is based is known.  Moreover, it ensures that a party who

10    seeks to argue for a broad construction is confronted with

11    the consequence of such a position, such as additional

12    invalidity challenges as soon as they are known.

13            Defendant admits receiving plaintiff's proposed

14    claim constructions on February 7, 2012, and those

15    constructions were filed with the Court on March 9, 2012.

16    See ECF Number 169 at 3.  See also plaintiff's Markman brief,

17    ECF 117.

18            By February 7, 2012, defendant possessed all the

19    information necessary to formulate invalidity contentions

20    under plaintiff's proposed claim constructions.  Not only was

21    defendant on notice of plaintiff's proposed constructions,

22    but defendant demonstrated under the circumstances awareness

23    of invalidity issues raised by the constructions in its

24    Markman briefs and during the March 23, 2012, telephone

25    conference.  Defendant argued in its March 9, 2012, Markman

1  brief that plaintiff's proposed claim construction would

2  render the '014 Patent "invalid for failing to comply with

3  the written description requirement of 35 U.S.C. § 112."  See

4  the defendant's '014 Markman brief, ECF 118 at 12, note 9.

5  Moreover, during the March 23, 2012, telephone conference,

6  defendant stated, "when we reviewed Prometheus's recently --

7  recently filed opening claim construction brief for the '014

8  Patent and the arguments set forth therein, it became evident

9  that were the Court to construe a particular claim term

10  according to Prometheus's proposed construction, the '014

11  Patent may be invalid for failing to comply with the written

12  description requirement of 35 U.S.C. 112."  See the Telephone

13  Conference at pages 21, line 17 to page 22, line 9;

14  and page 22 line 15 to line 23; and page 23, line 21 to

15  page 24, line 1.

16          Thus, not only could defendant have formulated

17  invalidity defenses soon after February 7, 2012, it evidently

18  did so.

19          Even as to invalidity defenses, the defendant may

20  not have articulated in its Markman briefing or during a

21  conference with the Court, defendant cannot justify its delay

22  in formulating contentions based on plaintiff's proposed

23  contentions.  Although defendant asserts that it required

24  Dr. Ganem's expertise in chemistry and chemical synthesis to

25  understand the impact of plaintiff's proposed claim

1   constructions to understand how prior art disclosures relate
2   to patent claims under plaintiff's proposed constructions and
3   to use that information to develop its defenses, this is
4   undermined by defendant's ability to make at least certain
5   arguments about invalidity months before it disclosed
6   Dr. Ganem's report on June 25, 2012.  Moreover, the amount of
7   time that defendant waited to file its amended invalidity
8   contentions exceeded the acceptable time frame to warrant a
9   finding of diligence.  "While a [party] may require time to
10  digest and marshal [the] evidence, develop a new theory, and
11  then chronicle the complete theory in contentions, this
12  period must be reasonable."  Realtime Data LLC v. Packeteer
13  Inc., Civ. No. 08-144, 2009 WL 2590101 at *4 (E.D. Tex.
14  August 18, 2009) (quoting O2 Micro, 467 F.3d at 1366
15  (internal quotation marks omitted)).

16          Here, the defendant had the proposed construction
17  since February 2012 and provided no explanation why they were
18  not promptly shared with their expert, particularly where
19  within four weeks of receipt, the defendant already concluded
20  that the constructions, if adopted, presented plaintiff with
21  validity problems.  Further, "the Federal Circuit has held
22  that generalized statements by a party attributing its delay
23  in moving to amend infringement contentions to its need to
24  consult with experts, carry no weight in the good cause
25  analysis."  Volumetrics Medical Imaging LLC v. Toshiba

1  <u>America Medical Systems Inc.</u>, Civ. No. 05-955, 2011 WL

2  2359061 at *16 n.21 (M.D.N.C. June 9, 2011) (citing <u>O2 Micro</u>,

3  467 F.3d at 1367)).  Courts may deny a request to amend where

4  a party fails to specifically point to an issue that

5  necessitated the delay.  <u>O2 Micro</u>, 467 F.3d at 1367;

6  <u>Realtime</u>, 2009 WL 2590101 at *4.

7          Although defendant claims that Dr. Ganem's

8  expertise is necessary, it fails to identify the testimony in

9  Dr. Gorkal's deposition or in plaintiff's contentions or in

10 plaintiff's <u>Markman</u> brief that Dr. Ganem need months to

11 analyze.  As previously discussed, defendant demonstrated its

12 view that plaintiff's claim construction rendered the '014

13 Patent invalid in defendant's March 9, 2012, opening <u>Markman</u>

14 brief; during the March 23, 2012, telephone conference; and

15 in defendant's April 9, 2012, responsive <u>Markman</u> brief.

16 Accordingly, it is unclear why defendant needed Dr. Ganem's

17 expertise to seek to add invalidity contentions it had

18 sufficient information to formulate in 2012 or why it took

19 until July 2, 2012, to serve the proposed invalidity

20 contentions on plaintiff.  Thus, defendant has failed to show

21 good cause and diligence and, hence, this element is not met.

22         New Jersey's local patent rules also require the

23 party seeking leave to amend to demonstrate it made a timely

24 application.  L. Pat. R. 3.7.  The Federal Circuit has

25 emphasized the importance of this element, recognizing that

```
 1   "if the parties were not required to amend their contentions
 2   promptly after discovering new information, the contentions
 3   requirement would be virtually meaningless as a mechanism for
 4   shaping the conduct of discovery and trial preparation."  O2
 5   Micro, 467 F.3d at 1666.
 6            Here, defendant sought to amend its proposed
 7   contingent invalidity contentions before the Court construed
 8   the claims at issue.  Yet, as previously discussed,
 9   defendant's argument that the proposed contentions were
10   submitted before claim construction, does not end the
11   inquiry.  In determining whether defendant's application was
12   timely, the Court must look to the period of time between
13   the defendant learned of the basis of its amendment and the
14   time it filed its application.  Defendant's proposed
15   contingent invalidity contentions were filed five months
16   after plaintiff's proposed claim construction of the '014
17   patent claims were disclosed on February 7, 2012.
18   Additionally, as previously discussed in its own March 9,
19   2012, Markman opening brief, defendant argued that
20   plaintiff's proposed claim construction would render the '014
21   Patent invalid for failing to comply with the written
22   description requirement of 35 U.S.C. § 112.  See the
23   defendant's Markman brief at 12, note 9.  Defendant also
24   demonstrated its knowledges of the allegedly problematic
25   nature of plaintiff's claim constructions in the March 23,
```

Case 1:19-cv-00441-CFC-CJB  Document 134-1  Filed 03/17/20  Page 39 of 45 PageID #:
4491
Case 2:11-cv-02441-FSH-PS  Document 174  Filed 03/01/12  Page 21 of 24  PageID: 873

Proceedings                                                    21

1   2012, telephone conference.  See the Telephone Conference

2   Transcript at 21, lines 17 to page 22, line 9; page 22,

3   line 15 to 23; page 23, line 21 through page 24, line 1.

4   Defendant again raised invalidity issues in its April 9, 20,

5   responsive Markman brief, in which it noted that the proposed

6   construction so broadened the claims of the '014 Patent that

7   they are rendered invalid for lack of written description.

8   See the defendant's Markman responsive brief at 6, note 4.

9          Defendant nonetheless waited until July 2, 2012,

10  five months after receiving the proposed claim constructions

11  and almost four months after receiving plaintiff's Markman

12  brief, to file its request to amend.  Thus, as defendant

13  chose to wait months before filing a request to amend its

14  invalidity contentions, its request to do so fails to meet

15  the local patent rules timely application requirement.  See

16  O2 Micro, 467 F.3d at 1367.

17          Therefore, for this additional reason, the request

18  is denied.

19          Finally, the Court need only consider undue

20  prejudice if the moving party has timely moved and made the

21  requisite showing of good cause.  O2 Micro, 467 F.3d at 1368.

22  See also Acer Inc. v. Technological Properties Ltd., Civ.

23  Nos. 08-877; 08-882; 08-5398, 2011 WL 1838768 at *2 (N.D.

24  Cal. May 13, 2011); Sunpower Corp. Systems v. Sunlink Corp.,

25  Civ. No. 08-2807, 2009 WL 1657987 at *1 (N.D. Cal. June 12,

 1  2009) (citing O2 Micro, 467 F.3d at 1368)).

 2         Because the defendant has not shown it acted with

 3  diligence, the Court is not obligated to consider whether the

 4  amendment would unduly prejudice plaintiff.  Nonetheless, the

 5  Court notes that an amendment at this stage would unduly

 6  prejudice plaintiff.  See Quantum Corp. v. Riverbed

 7  Technologies Inc., Civ. No. 07-4161, 2008 WL 2783227 at *1

 8  (N.D. Cal. July 15, 2008).

 9         Here, claim construction briefing is completed,

10  fact discovery is closed, Markman expert depositions have

11  been completed.  In addition, affirmative expert reports were

12  disclosed by June 25, 2012, and responsive reports were due

13  to be disclosed on August 3, 2012.  ECF Number 167.

14         To grant leave to add invalidity contentions at

15  this stage would cause substantial prejudice to the plaintiff

16  as there is no longer an opportunity to conduct discovery

17  implicated by them.  The stage of the proceedings and

18  prejudice to plaintiff further supports denial of leave to

19  assert the invalidity contentions.

20         Plaintiff also seeks to strike portions of the

21  Ganem report, arguing "its sole purpose ... is to support

22  Roxane's improper and belated invalidity contentions."  To

23  the extent and only to the extent the Ganem report discusses

24  the basis for invalidity contentions regarding the '014

25  Patent, plaintiff [sic] seeks to but is not permitted to add,

 1   the report would not be relevant, because it is not likely to

 2   lead to the discovery of admissible evidence, as the defenses

 3   addressed may not be added and will not be the subject of

 4   trial testimony.  The Court makes no ruling concerning any

 5   other aspect of the report.

 6            For all of these reasons, the defendant's request

 7   for leave to add invalidity contentions is denied.

 8            It is further ordered that the plaintiff's request

 9   to strike Dr. Ganem's report is granted in part only to the

10   extent the report discusses the basis for the invalidity

11   contentions regarding the '014 Patent that defendant is

12   precluded from adding, and denied in part to the extent the

13   report discusses other matters.

14            A form of Order consistent with this Opinion will

15   be issued.

16                    (Conclusion of proceedings)

17

18

19

20

21

22

23

24

25

Case 2:12-cv-01241-FSH-PS  Document 134-1  Filed 03/04/12  Page 24 of 24 PageID: 8786
Case 1:19-cv-00444-CFC-CJB  Document 184-1  Filed 01/17/20  Page 42 of 45 PageID #: 4494
Certification                                                24

 1                          Certification

 2        I, SARA L. KERN, Transcriptionist, do hereby certify

 3   that the 24 pages contained herein constitute a full, true,

 4   and accurate transcript from the official electronic

 5   recording of the proceedings had in the above-entitled

 6   matter; that research was performed on the spelling of proper

 7   names and utilizing the information provided, but that in

 8   many cases the spellings were educated guesses; that the

 9   transcript was prepared by me or under my direction and was

10   done to the best of my skill and ability.

11        I further certify that I am in no way related to any of

12   the parties hereto nor am I in any way interested in the

13   outcome hereof.

14

15

16

17

18   S/ *Sara L. Kern*                    August 9, 2012

19   _____     _____
     Signature of Approved Transcriber              Date

20

21
     Sara L. Kern, CET**D-338
22   King Transcription Services
     901 Route 23 South, Center Suite 3
23   Pompton Plains, NJ 07444
     (973) 237-6080
24

25

# Exhibit I

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

VLSI TECHNOLOGY LLC,                :
                                    :
                     Plaintiff,     :
                                    :
          v.                        :          Civil Action No. 18-966-CFC
                                    :
INTEL CORPORATION,                  :
                                    :
                     Defendant.     :

---

## MEMORANDUM ORDER

**WHEREAS**, the Court has considered the parties' competing proposals with respect to limiting the number of claims and prior art references (*see* Tr. of Apr. 3, 2019 Hr'g; D.I. 127; D.I. 131; D.I. 133);

**IT IS HEREBY ORDERED**, on this Twenty-second day of April in 2019, that:

1.      On or before April 26, 2018, Plaintiff shall limit itself to, and identify for Defendant, no more than 25 asserted claims;

2.      On or before May 10, 2019, Defendant shall limit itself to, and identify for Plaintiff, no more than 80 combinations of prior art references;

3.      On or before 30 days after the Court's issuance of a Claim Construction Order, Plaintiff shall limit itself to, and identify for Defendant, no more than 18 asserted claims; and

4.     On or before 14 days after Plaintiff has identified pursuant to paragraph three of this Order no more than 18 claims, Defendant shall limit itself to, and identify for Plaintiff, no more than 30 combinations of prior art references.[1]

**IT IS SO ORDERED.**

_____
CONNOLLY, UNITED STATES DISTRICT JUDGE

---

[1] Plaintiff may seek to add at a later date asserted claims and Defendant may seek to add at a later date combinations of prior art references upon a showing of good cause that includes a demonstration that the addition of the proposed new claims or combinations of the prior art references, as the case may be, is necessary to vindicate the due process rights of the party in question.