# Exhibit A

 FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
WWW.FINNEGAN.COM

**THOMAS J. SULLIVAN**
202.408.4005
thomas.sullivan@finnegan.com

December 31, 2019

YOUNG CONAWAY STARGATT & TAYLOR, LLP                    *Via Email*
Anne Shea Gaza
Samantha G. Wilson
Rodney Square
1000 North King Street
Wilmington, DE 19801

STERNE, KESSLER, GOLDSTEIN & FOX, P.L.L.C
Dennies Varughese
Adam C. LaRock
Lauren A. Watt
Charles Wysocki
Josephine Kim
1100 New York Avenue, N.W.
Washington, D.C. 20005

DORSEY & WHITNEY LLP
Paul T. Meiklejohn
Geoffrey M. Godfrey
David Tseng
701 Fifth Avenue, Ste. 6100
Seattle, WA 98104

  Re: *BioDelivery Sciences International, Inc., et al. v. Chemo Research S.L. et al.*, Case No. 19-cv-00444-CFC-CJB (D. Del.)

Dear Adam:

  We write in response to your letter of December 4, 2019, regarding purported deficiencies in BDSI's initial infringement contentions.  Initially, your December 4th letter did not request a response.  However, as Chemo has subsequently requested one, we herein provide this letter.  We disagree that BDSI's initial infringement contentions are deficient for at least the reasons stated below.

  As an initial matter, Chemo's December 4th correspondence attempted to raise a wholly new non-infringement position specific to the '866 patent's claim phrase "buffered environment."  Chemo did not argue that its ANDA Product fails to meet this

December 31, 2019
Page 2

element in either its January 31, 2019, Paragraph IV Notice Letter or its August 7, 2019, Response and Objections to Plaintiffs' Interrogatory No. 6. Instead, Chemo only contested infringement of the pH elements contained in the claims of the '866 patent. For example, Chemo's Notice Letter merely stated that Chemo's "ANDA Product does not contain a bioerodable mucoadhesive layer that is buffered to a pH between about 4 and 6" as the basis for its non-infringement position for independent claims 1 and 8 of the '866 patent. Notice Letter at 7. Chemo's response to Plaintiffs' Interrogatory No. 6, which requests Defendants to, *inter alia*, "describe in detail, on a claim-by-claim and element-by-element basis, the factual and legal bases" of any non-infringement positions, again stated "[t]he buprenorphine buccal film product described in ANDA No. 212036 does not satisfy at least the pH limitations of the asserted claims." Chemo's Responses and Objections to Plaintiffs' First Set of Interrogatories at 11. It was only on December 13, 2019, that Chemo first alleged in its contentions that its product did not meet the "buffered pH" element.

Nevertheless, BDSI's infringement contentions provide more than adequate notice of how the mucoadhesive layer of Chemo's ANDA Product contains a "buffered environment." Plaintiffs provided a detailed chart describing "how (in Plaintiffs' view) each limitation of each claim element for all asserted claims is met by each accused product." *WI-LAN Inc. v. Vizio, Inc.*, C.A. No. 15-788-LPS, 2018 U.S. Dist. LEXIS 20437, at *1-*2 (D. Del. Jan. 26, 2018). BDSI's contentions, based on Plaintiffs' understanding of Chemo's ANDA (the only information then-available to Plaintiffs), specifically state: "Data from Chemo Research's dissolution studies show an effective amount of buprenorphine disposed in a buffered environment." Plaintiffs' Initial Claim Charts at 9. Then, in the *very next sentence*, BDSI's contentions point to the presence of citric acid: "[c]itric acid was added to formulation . . . to lower the blend pH and assist in dissolving buprenorphine." *Id.* (quoting CHEMO_BEL-0000394). It is well-known that citric acid can be used to establish a buffered environment; i.e., a stabilized pH, and the '866 patent explicitly states so: "In one embodiment, the polymeric diffusion environment comprises a buffer system, e.g. *citric acid* . . . ." '866 patent at 3:53-54 (emphasis added). Indeed, Chemo's own ANDA, at page CHEMO_BEL-0000754, specifically indicates that citric acid can be both an "acid" and a "buffer." This page of Chemo's ANDA is cited through BDSI's contentions for why Chemo's product infringes each independent claim of the asserted patents, including claim 1 of the '866 patent. In light of such language in the contentions, we do not understand how Chemo can credibly argue Chemo was unaware of BDSI's position. *See WI-LAN Inc.*, 2018 U.S. Dist. LEXIS 20437, at *1 (party "need not in its contentions actually prove its infringement case").

Further, if there were any doubt as to BDSI's position, which there is not, BDSI stated during claim construction briefing (consistent with its contentions) that the citric acid in Chemo's ANDA Product creates the claimed "buffered environment." *See, e.g.*, Joint Claim Construction Brief at 37 ("It appears, however, that Defendants seek to add the 'containing a buffer' limitation to align with their noninfringement positions and *exclude* excipients, such as citric acid, that can create the claimed "buffered environment."). Chemo's claim that it is unaware of BDSI's position lacks merit.

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP

December 31, 2019
Page 3

     Further, BDSI's initial infringement contentions also provide ample detail on how Chemo's ANDA Product meets the pH elements of the asserted claims and infringes under the doctrine of equivalents based on the information then-available.  Recall that prior to BDSI serving its initial infringement contentions, Chemo had not provided *any* discovery concerning the pH of its product, and BDSI had to go to Court to obtain such discovery.  BDSI is plainly entitled to advance additional infringement arguments under the doctrine of equivalents based on discovery the Court ordered Chemo to produce.

     Moreover, BDSI's doctrine of equivalents analyses demonstrate that there are insubstantial differences between Chemo's product and the claimed invention.  In particular, as BDSI now understands Chemo's position, the only claim element that Chemo argues is missing from its product is "a buffered environment having a pH of between about 4 and about 6."  BDSI's contentions show that this element is met under the doctrine of equivalents because, *inter alia*, Chemo's product satisfies the function/way/result test because "its generic buprenorphine buccal film provides bioequivalent results to the use of Belbuca®.  CHEMO_BEL-0005475.  And Chemo further admits that the method of using its ANDA Product results in equivalent pharmacokinetic properties, equivalent efficacy, and equivalent side effects, as to the methods of using Belbuca®.  CHEMO_BEL-0005482-83; *see also* CHEMO_BEL-0000061-63; CHEMO_BEL-0000211-14; CHEMO_BEL-0000385-86; CHEMO_BEL-0000754-55; CHEMO_BEL-0000749; CHEMO_BEL-0000752."  Plaintiffs' Initial Claim Charts at 13, 33, 55, 65, 75; *see also id.* at 22, 44.

     Further, Chemo's characterization of *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1298 (Fed. Cir. 2009), is not correct.  *See Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1289 (Fed. Cir. 2010); *Intendis GmbH v. Glenmark Pharm. Ltd.*, 117 F. Supp. 3d 549, 573, 576-77 (D. Del. 2015) (comparing clinical trial testing brand and generic product), *aff'd*, 822 F.3d 1355 (Fed. Cir. 2016).

                    Sincerely,

                    */s/ Thomas J. Sullivan*

                    Thomas J. Sullivan

cc: Counsel of Record (via email)

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP