IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BIODELIVERY SCIENCES
INTERNATIONAL, INC. and ARIUS TWO,
INC.,

          Plaintiffs,

          v.

CHEMO RESEARCH, S.L., INSUD
PHARMA S.L.U., INTELGENX CORP., and
INTELGENX TECHNOLOGIES CORP.,

          Defendants.

REDACTED - PUBLIC VERSION
(Filed February 21, 2022)

C.A. No. 19-444-CFC-CJB



**LETTER TO THE HONORABLE CHRISTOPHER J. BURKE**
**FROM ANNE SHEA GAZA REGARDING THE STATUS OF CHEMO'S ANDA**

Dated: February 9, 2022

Of Counsel:

Dennies Varughese, Pharm. D.
Adam C. LaRock
Josephine Kim
Tyler C. Liu
Ryan E. Conkin
STERNE, KESSLER, GOLDSTEIN
 & FOX P.L.L.C
1100 New York Avenue NW
Suite 600
Washington, DC 20005
(202) 371-2600
dvarughese@sternekessler.com
alarock@sternekessler.com
joskim@sternekessler.com
tliu@sternekessler.com
rconkin@sternekessler.com

*Attorneys for Chemo Research S.L.*
*and Insud Pharma S.L.U.*

Paul T. Meiklejohn

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for Defendants*

Geoffrey M. Godfrey
Janelle Luceria Elysee
Dorsey & Whitney LLP
701 Fifth Avenue, Ste. 6100
Seattle, WA 98104
meiklejohn.paul@dorsey.com
godfrey.geoff@dorsey.com
elysee.janelle@dorsey.com

*Attorneys for IntelGenx Corp.*
*and IntelGenx Technologies Corp.*

Dear Judge Burke:

As Your Honor directed during the February 2, 2022 discovery dispute conference, the parties were to provide their respective positions about the status of Chemo's ANDA and its review at FDA. Defendants tried to negotiate a mutually agreeable exchange whereby the parties would exchange their respective positions with sufficient time in advance of the deadline to consider and revise them. For example, Defendants proposed that the parties exchange positions at 6 PM on Tuesday, February 8, and follow up with any additional edits on Wednesday. This would facilitate meaningful input from Chemo's overseas clients and coordination between both the Chemo and IntelGenx teams. BDSI would not agree and unreasonably insisted on exchanging positions at 5 PM today. BDSI's justification, as communicated through Delaware counsel, was that BDSI was "looking at" the preliminary stability data and the parties knew each other's positions already. *See* Ex. H. The preliminary stability data was produced *five days ago* and cannot justify BDSI's single-5-PM-exchange position.

Only after BDSI's rejection of Defendants' proposal, or even a short extension to the deadline, did Defendants proceed with the 5PM exchange. *See* Ex. G. At the 5 PM exchange today, Defendants provided BDSI their position on Chemo's ANDA and the status of FDA's review. At that time it became clear why BDSI insisted on such a late exchange: it was ambushing Defendants with a new declaration from Dr. Steve Bannister providing his unqualified views[1] on the stability data and FDA approvability. BDSI's reliance on this new expert declaration is improper as this status report was in lieu of a status teleconference. *See* D.I. 446. BDSI's gamesmanship exposes its desperation to avoid trial, and has prevented Defendants from fully addressing the issues raised by Dr. Bannister. Defendants reserve the right to fully respond to Dr. Bannister's declaration.

As Defendants worked diligently to determine the basis for BDSI's request to delay trial, correct BDSI's numerous inaccurate and misleading assertions, and begin to study Dr. Bannister's declaration, BDSI filed its own letter to the Court on mere minutes' notice. Defendants' position is below.

### Defendants' Position

FDA's review of Chemo's ANDA is ongoing. Chemo filed its response to FDA's Complete Response Letter ("CRL") on May 14, 2021. Soon thereafter, on May 19, 2021, FDA set "goal dates" to respond to Chemo for ███████████████████████████████████████████████████████████████████ *See* Ex. A at CHEMO_BEL-0067187. Chemo promptly produced this correspondence to BDSI on May 20. In September 2021, Chemo also promptly produced correspondence showing that ██████████████████████████████████████████████████████ *See* Ex. B at CHEMO_BEL-0067196. Chemo also recently produced documentation showing that ██████████████████████████████████████████████ *See* Ex. C at IGX-BUP-0187200. BDSI, however, continues to mischaracterize the status of FDA's

---

[1] Dr. Bannister has no experience reviewing ANDAs and is not qualified to opine on whether FDA will approve Chemo's ANDA.

review, and the pendency of Chemo's ANDA, in the hopes of avoiding the upcoming non-infringement trial scheduled for April 2022. There is no basis for BDSI to suggest that problems exist with the ANDA based on the fact that FDA's response is outstanding. *See* Ex. D at 35:11-16 (noting FDA's response was due in January 2022). BDSI has known since ███████ ██████████████████████████████████████ as BDSI has suggested. As things stand now, FDA has not indicated that its review is delayed or that it will not respond to Chemo's CRL response consistent with its goal dates.

BDSI now seeks—for a *third* time—to postpone adjudication on Chemo's non-infringing ANDA product. But, amending the case schedule at this time is unwarranted. The parties are currently proceeding on the case schedule that *BDSI* proposed on June 15, 2021, after its second motion to stay was denied. *See* D.I. 374 at 1; D.I. 389 at 1. BDSI selected the current April 2022 trial date knowing that it was possible FDA would respond to Chemo's CRL response in ███████ ████   *See* Ex. A at CHEMO_BEL-0067187. Moreover, BDSI seeks new discovery but it has already taken deposition testimony on Chemo's stability data and it will have the opportunity to depose Chemo's experts in the next month. Accordingly, there is no reason to change course.

Additionally, setting BDSI's unsupported speculation aside, there is no reason that this Hatch-Waxman case cannot be tried in late April 2022, as currently scheduled. There is no evidence that FDA will reject Chemo's non-infringing pH specification—the key infringement issue to be tried. In fact, in denying BDSI's second motion to stay, this Court noted that FDA simply asked Chemo to add the specification and that FDA had not previously rejected Chemo's pH specification. *See* D.I. 372 at ¶3. Therefore, trial should proceed as scheduled. BDSI, at best, raises a concern whether FDA will approve Chemo's ANDA before trial. But as this Court noted, "the relevant statute provides for pre-FDA approval adjudication" in Hatch-Waxman cases. *See* D.I. 372 at ¶3. In fact, Judge Connolly recently presided over two Hatch-Waxman bench trials where the accused generic products were unapproved as of trial. The parties in *Par Pharm., Inc. v Eagle Pharms., Inc.*, C.A. No. 18-0823-CFC-JLH (D. Del.) proceeded to trial in July 2021, although the accused product was not approved until several months later.[2] Similarly, the parties in *Astellas US LLC v. Apotex, Inc.*, C.A. No. 18-01675-CFC-CJB (D. Del.) proceeded to trial in January 2022 despite ongoing FDA review.[3] Thus, the fact that Chemo's ANDA may still be undergoing FDA review is no reason to delay trial.

BDSI relies heavily on Chemo's recently produced preliminary stability data to justify delaying trial. But that, too, is misplaced. Tellingly, BDSI resorts to mischaracterizing Chemo's experts' opinions concerning the impact of pH on impurities. Chemo's experts testified that ████ ███████████████████████████████████████   *See* BDSI Ex. 11 at ¶¶38 and 46. ████████████████████████████████████   *See* Ex. F at CHEMO_BEL-0059759. None of Chemo's experts, nor even Dr. Bannister, have opined ████ ██████████████████████████████████████

---

[2] *See* https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2022/211538Orig1s000ltr.pdf (FDA approval of Eagle's ANDA on December 15, 2021).

[3] *See* https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=BasicSearch.process (showing no approved therapeutic equivalents for Lexiscan).

███████████      Moreover, Chemo's ANDA product consists of multiple distinct dosage strengths: the high-dose (300 mcg, 600 mcg, and 900 mcg) strengths and the low-dose (75 mcg and 150 mcg) strengths.[4]█████████████████████████████████████████

*See* BDSI Ex. 17 at 5.
Thus, BDSI's speculation has no bearing on ████████████, and, at a minimum, trial can and should proceed on ████████. As for the ██████████████████████████, Chemo has multiple options, including ██████████████████████████████████████
████, potentially ███████████████████████████████████████

███████████████████ *See* Ex. E at 265:9-268:4; 296:15-297:17. Seeing as the infringement issues are the same for all of Chemo's ████████████, the currently scheduled trial should proceed regardless of which regulatory option Chemo takes.

Respectfully,

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)

cc:     Counsel of Record (by CM/ECF and email)
        Clerk of the Court (by hand delivery)

29087636.2

---

████████████████████████████████████

3

# Exhibits A-C
# Redacted in their Entirety

# Exhibit D

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BIODELIVERY SCIENCES          )
INTERNATIONAL, INC. and ARIUS )
TWO, INC.,                    )
                              )
            Plaintiffs,       )
                              )  C.A. No. 19-444(CFC)(CJB)
      v.                      )
                              )
CHEMO RESEARCH, S.L., INSUD   )
PHARMA S.L.U., INTELGENX CORP.,)
and INTELGENX TECHNOLOGIES    )
CORP.,                        )
                              )
            Defendants.       )

                    J. Caleb Boggs Courthouse
                    844 North King Street
                    Wilmington, Delaware

                    Wednesday, February 2, 2022
                    11:00 a.m.
                    Discovery Dispute Teleconference

BEFORE:  THE HONORABLE CHRISTOPHER J. BURKE
         United States District Court Magistrate Judge

APPEARANCES:

         MORRIS NICHOLS ARSHT & TUNNELL LLP
         BY:  JEREMY A. TIGAN, ESQUIRE

                 -and-

         DECHERT LLP
         BY:  JENNIFER S. SWAN, ESQUIRE
         BY:  HOWARD W. LEVINE, ESQUIRE

                          For the Plaintiffs

2

**1**  APPEARANCES CONTINUED:

**2**      YOUNG CONAWAY STARGATT & TAYLOR, LLP
           BY:  ANNE SHEA GAZA, ESQUIRE
**3**
               -and-
**4**
           STERNE KESSLER LLP
**5**      BY:  DENNIES VARUGHESE, ESQUIRE
           BY:  ADAM C. LaROCK, ESQUIRE
**6**
               -and-
**7**
           DORSEY & WHITNEY LLP
**8**      BY:  GEOFFREY M. GODREY, ESQUIRE

**9**              For the Defendants

**10**          *** PROCEEDINGS ***
**11**
**12**      THE COURT:  Good morning, everyone.  This is
**13**  Judge Burke here.  Before we begin, let me just say a few
**14**  things for the record as we go on the record today.
**15**  And the first is that we're here this morning for a
**16**  discovery dispute teleconference in the matter of
**17**  *BioDelivery Services International, Inc., et al vs. Chemo*
**18**  *Research S.L., et al.* It's Civil Action Number
**19**  19-444-CFC-CJB here in our court.
**20**      Before we go further, let me just have counsel
**21**  for each side identify themselves for the record.  We'll
**22**  start first with counsel for the Plaintiffs' side, and we'll
**23**  begin there with Delaware counsel.
**24**      MR. TIGAN:  Yes.  Good morning, Your Honor.
**25**  This is Jeremy Tigan with Morris Nichols on behalf of the

3

**1**  Plaintiffs, and I'm joined today by Howard Levine and
**2**  Jennifer Swan, both with the Dechert firm.
**3**      THE COURT:  Okay.  Good to be with you all.
**4**      We'll do the same for counsel for Defendants'
**5**  side and, again, we'll begin with Delaware counsel.
**6**      MS. GAZA:  Good morning, Your Honor.  It's Anne
**7**  Gaza from Young Conaway on behalf of all Defendants.  I'm
**8**  joined today by my colleague, Samantha Wilson, as well as
**9**  Dennies Varughese and Adam LaRock of Sterne Kessler for the
**10**  Chemo Defendants.  And Geoff Godfrey of Dorsey & Whitney for
**11**  the Intelgenx Defendants.
**12**      And, Your Honor, at a time convenient to you, we
**13**  did want to advise that we have a housekeeping issue that
**14**  we'd like to raise before we address the substantive
**15**  arguments in the agenda.
**16**      THE COURT:  Ms. Gaza, do you want to reference
**17**  that now?
**18**      MS. GAZA:  Certainly.  I'll defer to
**19**  Mr. Varughese.
**20**      MR. VARUGHESE:  Thank you, Anne.
**21**      Good morning, Your Honor.  Dennies Varughese
**22**  from Sterne Kessler.  I'd like to just request that Your
**23**  Honor seal the proceedings today.  We received notice that a
**24**  member or multiple members of the public may be attending.
**25**  Defendants reached out to BDSI's counsel to see if we could

4

**1**  work out a way to bifurcate the discussion to maybe insulate
**2**  some of the confidential information, but we weren't able to
**3**  find a clean way to do that.  And so BDSI's counsel
**4**  indicated that it would not oppose a request to seal the
**5**  entire argument, if it so pleases Your Honor.
**6**      THE COURT:  Okay.  It's the case that we have
**7**  received actually a number of requests from members of the
**8**  public to listen in on our teleconference today.  And my
**9**  courtroom deputy had provided members of the public with the
**10**  dial-in information for the call, and they may be on the
**11**  call now.
**12**      Obviously, hearings are known to be public here
**13**  in the court, whether they happen in our court or whether
**14**  they're happening telephonically.  And so, there's a really
**15**  strong presumption against entirely closing or sealing off
**16**  any proceeding.  The strong preference would be to, as best
**17**  as possible, attempt to address the issues in the
**18**  teleconference without necessarily having to refer to
**19**  information that a side might seek to later redact as
**20**  confidential as best we can.  At times we attempt to do as
**21**  much of that as possible.  And then if there has to be
**22**  reference to confidential information to try to cabin that
**23**  off at some later portion of the hearing.  Obviously, that's
**24**  difficult with a teleconference.
**25**      It's also the case that teleconferences aren't

33

11:41:42 **1** the case and or produce documents that demonstrate that.

11:41:46 **2** But, otherwise, it seems like the documents are relevant and

11:41:49 **3** material. They exist, and they should be timely produced.

11:41:53 **4** With regard to the second issue which is

11:41:56 **5** Plaintiffs' request that I order the Defendants' side to

11:41:58 **6** serve a supplemental privilege log, that request is going to

11:42:01 **7** be denied. The unlogged documents at issue here are

11:42:09 **8** documents that are generated after the filing of the

11:42:12 **9** complaint in this case. And as we've noted, pursuant to the

11:42:15 **10** Court's default standard, as well as the parties' earlier

11:42:18 **11** agreement in the case to follow the default standard, the

11:42:22 **12** Defendant wasn't required to include such documents in a

11:42:24 **13** privilege log. By the way, that portion of the default

11:42:27 **14** standard is found at Paragraph 1(b)(2) of the standard.

11:42:32 **15** The Plaintiffs have suggested, as we've

11:42:33 **16** discussed today, that the default standard approach should

11:42:37 **17** be jettisoned here because Defendants' side produced some

11:42:40 **18** 100,000 pages of new documents as of May of 2021. They've

11:42:44 **19** noted that that amounts to about 43 percent of the documents

11:42:46 **20** in the entire case, the majority of which were dating from

11:42:52 **21** 2020 and 2019. In other words, after the case was filed.

11:42:55 **22** But as Defendant notes in their letter brief,

11:42:58 **23** you know, that supplemental production was completed nearly

11:43:03 **24** eight months ago. The Plaintiff was aware that there would

11:43:07 **25** be such a new document production for many months before

34

11:43:10 **1** that. And so, the reality is that, you know, Plaintiff, you

11:43:17 **2** know, was sitting there in the middle of 2021 knowing that

11:43:20 **3** they were to and then did receive the substantial amount of

11:43:24 **4** these documents. They had the documents. They knew that

11:43:27 **5** the status quo of the case was there would be no additional

11:43:30 **6** privilege log for post-complaint documents. They should

11:43:35 **7** have timely requested a change to the default standard as of

11:43:41 **8** mid-2021, and they didn't. You know, nothing about the

11:43:47 **9** status of the case or the arguments made by Plaintiff

11:43:51 **10** suggest to me that their ask now is anything other than

11:43:56 **11** untimely.

11:43:58 **12** Plaintiff argues that there have been privilege

11:44:01 **13** issues in the case that have been questioned. Well, those

11:44:03 **14** issues have been in the case for a long time. It seems like

11:44:08 **15** it makes it only more urgent that as of the middle part of

11:44:11 **16** this year, Plaintiff was aware of this additional act of

11:44:15 **17** production. If they were going to ask Defendant to do what

11:44:17 **18** is no doubt going to be some substantial amount of work to

11:44:21 **19** have a new privilege log put together, they would have had

11:44:25 **20** every reason to know that they should be asking for that a

11:44:28 **21** long time ago. They didn't. The request now is untimely,

11:44:30 **22** and so I conclude that the Plaintiff has waived its right to

11:44:34 **23** seek any such supplemental privilege log pursuant to the

11:44:36 **24** federal rules. So, for those reasons, the motion is granted

11:44:40 **25** in part and denied in part, as I described here on the call.

35

11:44:43 **1** With all that said and understanding the Court's

11:44:46 **2** decision, is there anything I need to clarify for either

11:44:48 **3** side before we end our call today?

11:44:50 **4** For Plaintiffs side, Ms. Swan?

11:44:52 **5** MS. SWAN: No, Your Honor, although I believe

11:44:56 **6** that we are scheduled to also discuss Chemo's ANDA product

11:45:01 **7** on this call at this time. And it sounds like from what

11:45:07 **8** Chemo's counsel said today that their product is not ready

11:45:10 **9** for approval. They haven't even submitted the stability

11:45:14 **10** data. And, you know, so we just wanted to raise the status

11:45:17 **11** of Chemo's ANDA because we're about to go to trial. And I

11:45:20 **12** think on our last call, the Court had indicated that, you

11:45:26 **13** know, this current schedule was predicated on the FDA coming

11:45:30 **14** back to Chemo, and we'd know by January about the status of

11:45:34 **15** their ANDA. It's now February and we still do not know the

11:45:38 **16** status of their ANDA.

11:45:39 **17** THE COURT: Okay. And thank you for reminding

11:45:41 **18** me. We had discussed the first status report on that, and

11:45:46 **19** the Court noted that we would address it briefly on this

11:45:48 **20** call.

11:45:50 **21** Mr. Varughese, from Defendants' side, is there

11:45:52 **22** anything Defendant wishes to add in response to Ms. Swan's

11:45:55 **23** comments?

11:45:55 **24** MR. VARUGHESE: Yes, Your Honor. I'd like to

11:45:57 **25** advise the Court of some dates and some recent developments.

36

11:46:00 **1** But respectfully, if it pleases the Court, may I ask to

11:46:03 **2** renew my request to seal the hearing from folks in the

11:46:07 **3** public?

11:46:08 **4** THE COURT: I think, as a practical matter,

11:46:11 **5** Mr. Varughese, it probably will not make -- to the extent

11:46:16 **6** you need to share information that would otherwise be

11:46:19 **7** confidential, it sounds like you do, it's probably not going

11:46:22 **8** to be practical to do that here on our teleconference.

11:46:25 **9** Unlike if we were physically in court, I can't confirm that

11:46:29 **10** our "virtual courtroom" has been cleared.

11:46:32 **11** So, I think what I would do is I think it may be

11:46:36 **12** helpful for me to direct the parties to provide me with a

11:46:39 **13** short joint status report with regard to this issue where

11:46:45 **14** the parties can tell me whatever they wish to tell me about

11:46:48 **15** the current state of affairs and Plaintiffs' concerns to

11:46:51 **16** Defendants' responses. And then to the extent that I feel

11:46:52 **17** that I either need to set up an additional call or request

11:46:55 **18** that if there's a request for relief that it be made in

11:46:58 **19** writing, I can do so.

11:47:00 **20** So, I'd be contemplating maybe a joint letter of

11:47:03 **21** no more than, say, three single-spaced pages that the

11:47:06 **22** parties might provide within a week. That's just off the

11:47:09 **23** top of my head. But you all, I know you've got other issues

11:47:12 **24** and things you're dealing with in the case.

11:47:14 **25** Is that workable for you on Plaintiffs' side,

# Exhibit E-F
# Redacted in their Entirety

Exhibit G

| | |
|---|---|
| **From:** | Wilson, Samantha <SWilson@ycst.com> |
| **Sent:** | Tuesday, February 8, 2022 9:11 PM |
| **To:** | 'Tigan, Jeremy A.' |
| **Cc:** | Gaza, Anne Shea; Wilson, Samantha |
| **Subject:** | BDSI/Chemo |
| **Attachments:** | image001.png |

Hi Jeremy,

Following up on our call today regarding the timing for exchanging positions for the joint status report due tomorrow, Defendants do not think that BDSI&#8217;s proposed first and only exchange at 5pm tomorrow is reasonable.  We would consent to a short extension to the filing deadline.  But absent BDSI&#8217;s agreement on an extension, since we understand that BDSI needs until 5pm ET tomorrow to provide its portion, defendants will also provide their portion at 5pm ET but reserve the right to consider and make any subsequent changes before signing off on any filing with the Court.

Thank you,
Sam

　　Samantha G. Wilson, Associate
Young Conaway Stargatt &amp; Taylor, LLP Rodney Square, 1000 North King Street Wilmington, DE 19801
P:  302.571.5018 | F: 302-576-3547
SWilson@ycst.com<mailto:SWilson@ycst.com> | https://protect-us.mimecast.com/s/S1TtCM89P1ixgABqTwFFE-?domain=youngconaway.com<https://protect-us.mimecast.com/s/07llCNk8g0iVAGk0s4WPOy?domain=youngconaway.com> | vCard<https://protect-us.mimecast.com/s/EMJQCR6Lm1HnJz4vuoaZj5?domain=youngconaway.com>

This message may contain confidential attorney-client communications or other protected information. If you believe you are not an intended recipient (even if this message was sent to your e-mail address), you may not use, copy, or retransmit it. If you believe you received this message by mistake, please notify us by return e-mail, and then delete this message. Thank you for your cooperation.

# Exhibit H

| | |
|---|---|
| **From:** | Tigan, Jeremy A. <JTigan@morrisnichols.com> |
| **Sent:** | Tuesday, February 8, 2022 9:56 AM |
| **To:** | Wilson, Samantha |
| **Cc:** | Gaza, Anne Shea |
| **Subject:** | RE: BDSI/Chemo |

Have time to touch base today?  As a heads up, we won't be ready to exchange today.  My team is still looking at Chemo's production from late Friday.

---

**From:** Wilson, Samantha <SWilson@ycst.com>
**Sent:** Monday, February 7, 2022 4:51 PM
**To:** Tigan, Jeremy A. <JTigan@morrisnichols.com>
**Cc:** Gaza, Anne Shea <agaza@ycst.com>; Wilson, Samantha <SWilson@ycst.com>
**Subject:** [EXT] RE: BDSI/Chemo

After your call is good if it works for you – thanks.

 **Samantha G. Wilson**, **Associate**
Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
P:  302.571.5018 | F: 302-576-3547
SWilson@ycst.com | www.youngconaway.com | vCard

This message may contain confidential attorney-client communications or other protected information. If you believe you are not an intended recipient (even if this message was sent to your e-mail address), you may not use, copy, or retransmit it. If you believe you received this message by mistake, please notify us by return e-mail, and then delete this message. Thank you for your cooperation.

**From:** Tigan, Jeremy A. <JTigan@morrisnichols.com>
**Sent:** Monday, February 7, 2022 4:51 PM
**To:** Wilson, Samantha <SWilson@ycst.com>
**Cc:** Gaza, Anne Shea <agaza@ycst.com>
**Subject:** RE: BDSI/Chemo

I'm on a M&C until 6, unfortunately.  Could probably call you shortly thereafter, or tomorrow morning, whichever you prefer.

---

**From:** Wilson, Samantha <SWilson@ycst.com>
**Sent:** Monday, February 7, 2022 4:50 PM
**To:** Tigan, Jeremy A. <JTigan@morrisnichols.com>
**Cc:** Gaza, Anne Shea <agaza@ycst.com>; Wilson, Samantha <SWilson@ycst.com>
**Subject:** [EXT] RE: BDSI/Chemo

Hi Jeremy – I heard back from my team on this – free to touch base?  I know I caught you at the filing rush – I'm pretty open.



**Samantha G. Wilson**, Associate
Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
P:  302.571.5018 | F: 302-576-3547
SWilson@ycst.com | www.youngconaway.com | vCard

This message may contain confidential attorney-client communications or other protected information. If you believe you are not an intended recipient (even if this message was sent to your e-mail address), you may not use, copy, or retransmit it. If you believe you received this message by mistake, please notify us by return e-mail, and then delete this message. Thank you for your cooperation.

**From:** Tigan, Jeremy A. <JTigan@morrisnichols.com>
**Sent:** Monday, February 7, 2022 10:49 AM
**To:** Wilson, Samantha <SWilson@ycst.com>
**Cc:** Gaza, Anne Shea <agaza@ycst.com>
**Subject:** RE: BDSI/Chemo

Sure, will do.  Thanks.

**From:** Wilson, Samantha <SWilson@ycst.com>
**Sent:** Monday, February 7, 2022 10:48 AM
**To:** Tigan, Jeremy A. <JTigan@morrisnichols.com>
**Cc:** Gaza, Anne Shea <agaza@ycst.com>; Wilson, Samantha <SWilson@ycst.com>
**Subject:** [EXT] RE: BDSI/Chemo

Sure – want to call my office then?



**Samantha G. Wilson**, Associate
Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
P:  302.571.5018 | F: 302-576-3547
SWilson@ycst.com | www.youngconaway.com | vCard

This message may contain confidential attorney-client communications or other protected information. If you believe you are not an intended recipient (even if this message was sent to your e-mail address), you may not use, copy, or retransmit it. If you believe you received this message by mistake, please notify us by return e-mail, and then delete this message. Thank you for your cooperation.

**From:** Tigan, Jeremy A. <JTigan@morrisnichols.com>
**Sent:** Monday, February 7, 2022 10:48 AM
**To:** Wilson, Samantha <SWilson@ycst.com>
**Cc:** Gaza, Anne Shea <agaza@ycst.com>
**Subject:** RE: BDSI/Chemo

11:30?

**From:** Wilson, Samantha <SWilson@ycst.com>
**Sent:** Monday, February 7, 2022 10:47 AM
**To:** Tigan, Jeremy A. <JTigan@morrisnichols.com>
**Cc:** Gaza, Anne Shea <agaza@ycst.com>; Wilson, Samantha <SWilson@ycst.com>
**Subject:** [EXT] RE: BDSI/Chemo

Hi Jeremy – sure, I'm pretty open.  When works for you?



**Samantha G. Wilson**, **Associate**
Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
P:  302.571.5018 | F: 302-576-3547
SWilson@ycst.com | www.youngconaway.com | vCard

This message may contain confidential attorney-client communications or other protected information. If you believe you are not an intended recipient (even if this message was sent to your e-mail address), you may not use, copy, or retransmit it. If you believe you received this message by mistake, please notify us by return e-mail, and then delete this message. Thank you for your cooperation.

**From:** Tigan, Jeremy A. <JTigan@morrisnichols.com>
**Sent:** Monday, February 7, 2022 8:51 AM
**To:** Wilson, Samantha <SWilson@ycst.com>
**Cc:** Gaza, Anne Shea <agaza@ycst.com>
**Subject:** BDSI/Chemo

Hi Sam,

Would you have a few minutes later today to discuss logistics for the joint letter due to J. Burke on Wednesday?

Thanks,

Jeremy

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

3